FILED
COURT OF APPEALS
DIVISION II

2015 FEB -3 AM 8: 52

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44763-1-II |
| Respondent, | |
| v. | |
| LARONZO DESHON MURPHY, | UNPUBLISHED OPINION |
| Appellant. | |

Worswick, P.J. — Laronzo Murphy appeals his convictions and sentences for first degree robbery,[1] second degree assault,[2] and possession of marijuana with intent to deliver.[3] Murphy argues that (1) the search warrant contained overbroad firearm and photograph clauses, (2) the trial court erred by failing to give a unanimity instruction for possession of marijuana with intent to deliver, (3) the prohibition against double jeopardy precludes his second degree assault conviction, (4) the trial court incorrectly included four Oregon convictions in his offender score, and (5) his trial counsel provided ineffective assistance by failing to argue that the search warrant was overbroad. Finally, Murphy argues, and the State concedes, that (6) the trial court erred by adding the possession of marijuana with intent to deliver conviction's school bus route stop sentencing enhancement to Murphy's standard sentence range for first degree robbery and second degree assault.

---

[1] RCW 9A.56.200.

[2] RCW 9A.36.021.

[3] Former RCW 69.50.401 (2005); RCW 69.50.204(c)(22).

We hold that (1) Murphy failed to preserve for appeal his search warrant argument, (2) the trial court erred by failing to provide a unanimity instruction, (3) double jeopardy's merger doctrine precludes Murphy's second degree assault conviction, (4) the trial court erroneously calculated Murphy's offender score, and (5) Murphy has failed to show that his counsel was ineffective. Finally, we (6) accept the State's concession that the trial court erroneously added the school bus route stop sentencing enhancement to the standard sentence range for first degree robbery and second degree assault.

Consequently, we affirm Murphy's first degree robbery conviction, but vacate his sentence for that crime. We vacate Murphy's conviction for second degree assault and the associated firearm sentencing enhancement. We vacate Murphy's conviction for possession of marijuana with intent to deliver and the associated school bus route stop sentencing enhancement. We remand for further proceedings consistent with this opinion.[4]

## FACTS

A.    *Background*

1. *Robbery*

Murphy believed that his cousin Sharonda McKeen owed him reimbursement for $150 worth of marijuana he had provided her. On August 1, 2012, Murphy drove to Sharonda's

---

[4] Murphy also argues (1) the trial court erroneously excluded documentation and testimony supporting Murphy's affirmative medical marijuana defense to possession of marijuana with intent to deliver, and (2) trial counsel was ineffective for failing to raise an affirmative defense to the school bus route stop sentencing enhancement for possession of marijuana with intent to deliver. Because we vacate the possession of marijuana with intent to deliver conviction and its attached school bus route stop enhancement on other grounds, we do not consider these arguments.

residence in a vehicle registered to Murphy's girlfriend, Sariat Durosimi. There, Murphy confronted Sharonda's husband Ricky McKeen, pointed a handgun at him, and demanded money. Ricky gave Murphy money, and Murphy left Sharonda's residence in Durosimi's vehicle.[5]

The next day, detectives traced Durosimi's vehicle to Durosimi's apartment, where Murphy lived "most of the time" and received mail. 2 Report of Proceedings at 256. Detectives arrested Murphy for a crime unrelated to this case. Detectives discovered a "baggie" containing marijuana in Murphy's pants pocket.

2. *Search of Durosimi's Vehicle and Apartment*

Detectives obtained a warrant for Durosimi's apartment and vehicle seeking evidence of first degree robbery and unlawful possession of a firearm. The search warrant authorized a search for, among other things:

> 1) **Firearms; Specifically a nickel finish, small frame, semi-automatic handgun;** also to include any other illegally possessed, or stolen firearms, including, but not limited to the specific listed firearm, and any other firearms to which ownership thereof is questionable or disputed, and also to include any ammunition, holsters, cleaning kits, instruction manuals, boxes, paperwork or other items connected to firearms at the listed residence/vehicles;
>
> . . . .
>
> 4) **Photographs**, of the listed location, and of drugs, firearms, or other potential evidence in the case, including still photos, negatives, digital images, digital video, video tapes, slides, films, undeveloped film, and the contents therein, in particular, photographs of suspects, co-conspirators, assets, and controlled substances, particularly marijuana.

Clerk's Papers (CP) at 140-41. The warrant was supported by an affidavit, which stated:

> Deputy Chris Nichols . . . . contacted Ricky McKeen, who told Deputy Nichols that Laronzo Murphy came to his house and robbed him at gun point. . . . [Ricky] stated

---

[5] We refer to Sharonda McKeen and Ricky McKeen by their first names for clarity, and intend no disrespect.

Murphy was sitting in a blue Ford Focus in front of [Ricky's] house. Murphy was the only occupant in the vehicle and was driving. [Ricky] stated he walked to the open passenger's side window to contact Murphy. [Ricky] stated Murphy told him [Sharonda] owed Murphy money. When [Ricky] refused to give money to Murphy, Murphy pulled a gun out of the center console of the Ford. [Ricky] stated Murphy pointed a small caliber nickel plated semi-automatic pistol at [Ricky].

. . . .

Deputy Nichols was able to learn that Murphy was associated with a blue Ford Focus owned by his girlfriend, Sariat Durosimi . . . . registered to Sariat Durosimi at [her apartment], in Vancouver.

CP at 145. The affidavit also stated:

I asked Murphy what had happened the previous night with Ricky. He told me that he was owed some money by [Sharonda]. He went to get the money. He said that he talked to Ricky, and Ricky threw the money at him through the window of the Focus, which Murphy was still seated in. He said that there was no violence, no guns involved, and no threats. Murphy indicated that he did tell Ricky in no uncertain terms that he was going to get his money during their conversation.

I asked Murphy if he had gone anywhere other than the apartment since this interaction with Ricky. He said that he went straight back to the apartment, and that he hadn't gone anywhere else. I asked him if anyone else had used the car since then. He said no.

. . . .

Durosimi told Detective Sofianos that there were no guns at the house. She did tell him, however, that she and Laronzo had gone shooting with several friends of Laronzo's about a week ago.

CP at 146-47. The affidavit further stated:

I ran a criminal history check on Laronzo Murphy through CCSO [(Clark County Sheriff's Office)] Records. I observed the following felony convictions for Murphy:

**Delivery Controlled Substance w/in 1000 feet of a school—Felony**
**Possess Controlled Substance—Felony**
**Manufacture/Delivery of Controlled Substance w/in 1000 feet of a school—Felony**

I ran a criminal history check on Sariat Durosimi through CCSO Records. I found no felony convictions, and in fact, no criminal convictions.

4

Your affiant has questioned suspects as to how they commit their crimes and where they hide weapons, and illegal drugs. Your Affiant is aware that people involved in these types of crimes often arm themselves with rifles, pistols, shotguns and other dangerous weapons. These weapons are used to protect themselves from competitors, and from law enforcement. Firearms are used as a common method of intimidation to discourage others from providing information about the illicit business to law enforcement. Your Affiant is aware that these weapons, particularly when illegally possessed, are often hidden in the vehicle or residence of a person close to them who is NOT a prohibited possessor of firearms, in order to provide a plausible defense.

CP at 147-48.

While searching Durosimi's apartment pursuant to the warrant, detectives discovered a small caliber, chrome, semi-automatic handgun. Detectives also discovered four marijuana plants, an electronic scale, and a notebook. The detectives photographed the scene.

### 3. *Charges Against Murphy*

For the single act of pointing a handgun at Ricky and taking his money, the State charged Murphy with two counts: first degree armed robbery and second degree assault, each with a firearm sentencing enhancement.[6] For the two acts involving marijuana, actual possession of the marijuana found on his person and constructive possession of the marijuana found in Durosimi's apartment, the State charged Murphy with one count of possession of marijuana with intent to deliver, with a school bus route stop sentencing enhancement.

### B. *Trial*

The electronic scale, notebook, and the small caliber, chrome, semi-automatic handgun were admitted at Murphy's trial. Many of the detectives' photographs of the scene were

---

[6] RCW 9.94A.533(3).

5

admitted, including a photograph of a picture of a male and a female hanging on Durosimi's apartment wall. No other photographs or images seized under the search warrant were admitted.

At trial, Murphy's defense to first degree robbery was that Murphy gave Sharonda $150 worth of marijuana and that Murphy's repeated requests for reimbursement motivated Ricky to falsely accuse Murphy of robbery. Murphy's defense to possession of marijuana with intent to deliver was an affirmative designated provider defense: that Murphy was authorized to possess the marijuana as Durosimi's designated medical marijuana provider. Chapter 69.51A RCW. Trial counsel filed a motion to suppress but did not challenge the warrant's firearm clause or photograph clause.

The trial court did not instruct the jury that a unanimous decision was required on the possession of marijuana with intent to deliver charge. In closing argument, the State argued that Murphy's possession was a single continuous course of conduct and that, thus, the jury could convict on either the actual possession of marijuana in Murphy's shorts pocket or the constructive possession of marijuana in Durosimi's apartment.

C.    *Sentencing*

The jury convicted Murphy on all three counts. By special verdict, the jury found that Murphy was armed with a firearm while committing first degree robbery and second degree assault, and that Murphy was within 1,000 feet of a school bus route stop when committing possession of marijuana with intent to deliver. At sentencing, the trial court ruled double jeopardy did not preclude Murphy's conviction for both first degree robbery and second degree assault. But the trial court added only one point to Murphy's offender score for these two offenses, ruling they constituted the same criminal conduct. The trial court also included three

prior Oregon convictions for unlawful delivery of an imitation controlled substance[7] and one prior Oregon conviction for attempted unlawful delivery of an imitation controlled substance[8] in Murphy's offender score.

The trial court calculated a base sentence range of 77-102 months for first degree robbery. The trial court added 60 months for the firearm enhancement, and an additional 24 months apparently for the school bus route stop enhancement, resulting in a standard sentence range of 161-186 months' imprisonment for first degree robbery. The trial court calculated a base sentence range of 33-43 months for second degree assault. The trial court added 36 months for the firearm enhancement, and an additional 24 months apparently for the school bus route stop enhancement, resulting in a standard sentence range of 93-103 months' imprisonment for second degree assault. The trial court calculated a base sentence range of 12-24 months for possession of marijuana with intent to deliver and added 24 months for the school bus route stop enhancement, resulting in a standard sentence range of 36-48 months' imprisonment.

The trial court sentenced Murphy to the midpoint of these ranges and ruled that "[a]ll counts shall be served concurrently, except for the portion of those counts for which there is an enhancement." CP at 9. Murphy appeals.

## ANALYSIS

### I. OVERBROAD WARRANT

Murphy argues for the first time on appeal that the search warrant's firearm and photograph clauses were unconstitutionally overbroad. The State argues that this issue cannot be

---

[7] OR. REV. STAT. § 475.912 (2009).

[8] OR. REV. STAT. § 161.405(1) (2009).

raised for the first time on appeal. Because Murphy has failed to show manifest error, we agree with the State.

A.      *Arguments Not Raised in Trial Court - RAP 2.5(a)*

Generally, we will not entertain a claim of error not raised before the trial court. RAP 2.5(a). But RAP 2.5(a) provides an exception to this general rule where an appellant can show a manifest error affecting a constitutional right. *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011). Showing manifest error requires the appellant to show actual and identifiable prejudice to the defendant's constitutional rights at trial. *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007). For an appellant to show actual prejudice by trial counsel's failure to move to suppress, she or he must show that the trial court likely would have excluded evidence in response to a motion to suppress and that that exclusion would have had a practical or identifiable consequence at trial. *See State v. McFarland*, 127 Wn.2d 322, 333-34, 899 P.2d 1251 (1995); *Gordon*, 172 Wn.2d at 676. To make this determination, we necessarily must preview the merits of an appellant's alleged error. *See State v. Walsh*, 143 Wn.2d 1, 8, 17 P.3d 591 (2001). Here, we focus on whether Murphy has shown the requisite prejudice.

B.      *Preview of Arguments*

The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution impose two requirements upon a search warrant. First, the search warrant must be supported by probable cause. *State v. Perrone*, 119 Wn.2d 538, 545, 834 P.2d 611 (1992). Second, the search warrant must describe with particularity the things to be seized. 119 Wn.2d at 545. Because these requirements are interwoven, we discuss them together.

8

We review the trial court's probable cause and particularity determinations de novo, giving deference to the magistrate's determination and resolving doubts in favor of the search warrant's validity. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008); *State v. Reep*, 161 Wn.2d 808, 813, 167 P.3d 1156 (2007); *State v. Chenoweth*, 160 Wn.2d 454, 477, 158 P.3d 595 (2007). We evaluate search warrants in a common sense, practical manner. *Perrone*, 119 Wn.2d at 549.

To establish probable cause, the affidavit supporting the search warrant must "set[] forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched." *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999).

To establish particularity, "a search warrant must be sufficiently definite so that the officer executing the warrant can identify the property sought with reasonable certainty." *State v. Stenson*, 132 Wn.2d 668, 692, 940 P.2d 1239 (1997). This required degree of specificity varies based upon the circumstances and items involved in each case. 132 Wn.2d at 692. For example, "[w]hen the nature of the underlying offense precludes a descriptive itemization," courts allow for a lesser degree of particularity. *See State v. Riley*, 121 Wn.2d 22, 28, 846 P.2d 1365 (1993). In such a situation, "generic classifications such as lists" satisfy the particularity requirement as long as the search is "circumscribed by reference to the crime under investigation." *Riley*, 121 Wn.2d at 28. We require a great deal of particularity where the warrant authorizes a search for First Amendment protected materials. *Perrone*, 119 Wn.2d at 547-48.

A warrant is overbroad if either the probable cause or particularity requirement is not satisfied. *State v. Maddox*, 116 Wn. App. 796, 805, 67 P.3d 1135 (2003), *aff'd* 152 Wn.2d 499, 98 P.3d 1199 (2004). Thus, a warrant is overbroad if it either fails to describe with sufficient particularity items for which probable cause exists, or describes items for which no probable cause exists. 116 Wn. App. at 805.

Overbroad portions of a warrant can be severed from the remainder of a valid warrant. *Perrone*, 119 Wn.2d at 556. "Under the severability doctrine, 'infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant' but does not require suppression of anything seized pursuant to valid parts of the warrant." *Perrone*, 119 Wn.2d at 556 (quoting *United States v. Fitzgerald*, 724 F.2d 633, 637 (8th Cir. 1983)). The doctrine applies when a warrant includes not only items that are supported by probable cause and described with particularity, but also items that are not supported by probable cause or not described with particularity, so long as a "'meaningful separation' can be made on 'some logical and reasonable basis[.]'" *Maddox*, 116 Wn. App. at 806-07 (alteration in original) (quoting *Perrone*, 119 Wn.2d at 560).

1. *Application to the Warrant's Firearm Clause*

Murphy argues that the warrant's firearm clause is overbroad. Because it is not, he has failed to preserve this argument under RAP 2.5.

We evaluate probable cause and particularity in relation to the crime for which law enforcement seeks evidence. *See Thein*, 138 Wn.2d at 140; *Stenson*, 132 Wn.2d at 692. Here, officers sought evidence for the crime of unlawful possession of a firearm. A person is guilty of unlawful possession of a firearm in at least the second degree "if the person owns, has in his or

10

No. 44763-1-II

her possession, or has in his or her control any firearm after having previously been convicted" of a felony. RCW 9.41.040(1), (2)(a)(i).

The firearm clause here met the probable cause requirement. The warrant's firearms clause stated:

> 1) **Firearms; Specifically a nickel finish, small frame, semi-automatic handgun;** also to include any other illegally possessed, or stolen firearms, including, but not limited to the specific listed firearm, and any other firearms to which ownership thereof is questionable or disputed, and also to include any ammunition, holsters, cleaning kits, instruction manuals, boxes, paperwork or other items connected to firearms at the listed residence/vehicles.

CP at 140. The warrant's probable cause affidavit stated that Ricky had reported Murphy robbed him at gunpoint; that after the confrontation, Murphy had not been anywhere except for Durosimi's apartment and vehicle; and that Murphy was a convicted felon. These facts and circumstances set out in the affidavit are sufficient to establish a reasonable inference that Murphy was probably involved in unlawful possession of a firearm and that evidence of that crime could be found at Durosimi's vehicle and apartment. The affidavit contained sufficient probable cause.

The firearm clause also met the particularity requirement. The nature of the underlying offense of unlawful possession of a firearm precludes a descriptive itemization for two reasons. First, a felon's possession of *any type* of firearm constitutes unlawful possession of a firearm, thus precluding an itemization more descriptive than "the specific listed firearm, and any other firearms to which ownership thereof is questionable or disputed." CP at 140. Second, diverse types of evidence could connect the defendant to the firearm, such as "ammunition, holsters, cleaning kits, instruction manuals, boxes, paperwork or other items connected to firearms at the listed residence/vehicles." CP at 140. The search authorized by the firearm clause was

11

circumscribed by an explicit statement that the crimes under investigation were first degree robbery and unlawful possession of a firearm.

Because the nature of the underlying offense of unlawful possession of a firearm precludes a descriptive itemization and the search authorized by the firearm clause was circumscribed by the crime under investigation, we hold that in this case, the firearm clause was sufficiently definite so that the officer executing the warrant could identify the property sought with reasonable certainty. Thus, the firearm clause satisfied the particularity requirement.

Because the firearm clause was supported by probable cause and had sufficient particularity, it was not overbroad. Thus, it is not likely that the trial court would have excluded any evidence in response to a motion to suppress challenging the firearm clause. Therefore, Murphy has not demonstrated actual prejudice and we do not consider Murphy's allegation of error for the first time on appeal. RAP 2.5(a).

2. *Application of the Severance Doctrine to the Warrant's Photograph Clause*

Murphy argues that the warrant's photograph clause was overbroad in violation of the first amendment and that the photograph clause cannot be severed because a notebook seized from Durosimi's apartment and admitted at trial was first amendment material. We hold that because the photograph clause can be meaningfully severed from the valid portion of the warrant, Murphy has not shown actual prejudice.

We will only apply the severability doctrine where five factors are met:

First, the warrant must lawfully have authorized entry into the premises. . . .
  Second, the warrant must include one or more particularly described items for which there is probable cause.
  Third, the part of the warrant that includes particularly described items supported by probable cause must be significant when compared to the warrant as a whole. If most of the warrant purports to authorize a search for items not

12

supported by probable cause or not described with particularity, the warrant is likely to be "general" in the sense of authorizing "a general, exploratory rummaging in a person's belongings [,]" and no part of it will be saved by severance or redaction.

Fourth, the searching officers must have found and seized the disputed items while executing the valid part of the warrant.

Fifth, the officers must not have conducted a general search, i.e., a search in which they "flagrantly disregarded" the warrant's scope.

*Maddox*, 116 Wn. App. at 807-09 (alteration in original) (internal quotation marks omitted)

(quoting *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976);

*United States v. Foster*, 100 F.3d 846, 851 (10th Cir. 1996)). Murphy challenges only the third

factor.[9]

Here, the warrant's grant of authority to search for firearms, currency, marijuana and

marijuana paraphernalia, and cellular telephones was significant when compared to its whole,

and the warrant's grant of authority to search for images was insignificant when compared to its

whole. Thus, the third factor is satisfied, and the photograph clause is severable. *See Maddox*,

116 Wn. App. at 809-10.

Except for the detective's photograph of a picture hanging on Durosimi's apartment wall,

the trial court admitted no photographs or images at trial. Assuming without deciding that the

notebook contained material protected by the First Amendment, the record contains no evidence,

and Murphy does not argue on appeal, that the notebook was seized pursuant to the photograph

clause.

---

[9] For the first time in his reply brief, Murphy argues that the warrant lacks a nexus between the area to be searched and the evidence to be seized. Because Murphy raised this issue for the first time in a reply brief, we do not consider it. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Thus, any infirmity of the photograph clause would have required suppression of only the detectives' photograph of the picture hanging on Durosimi's apartment wall. Therefore, it is not likely that the trial court would have excluded any evidence in response to a motion to suppress challenging the photograph clause, except for the detectives' photograph of the picture hanging on Durosimi's apartment wall.

Murphy makes no arguments on appeal related to the photograph of the picture hanging on Durosimi's apartment wall and did not designate this photograph on appeal. Accordingly, Murphy has not demonstrated any actual prejudice related to the photograph of the picture on Durosimi's apartment wall. Thus, Murphy has not met his burden of demonstrating actual prejudice and we do not consider Murphy's allegation of error for the first time on appeal. RAP 2.5(a).

Having previewed Murphy's arguments, we hold that he has failed to show manifest error. Therefore, we do not consider his search warrant arguments on appeal.

## II. UNANIMITY JURY INSTRUCTION

Murphy argues the trial court erred by failing to provide the jury with a unanimity instruction regarding the possession of marijuana with intent to deliver count because the jury could have convicted him based on either the evidence found in his shorts pocket or the marijuana found in Durosimi's apartment. The State argues Murphy was not entitled to a unanimity instruction because the two instances of possession were part of a single continuing course of conduct. We agree with Murphy.

We review de novo whether a unanimity instruction is required. *See State v. Linehan*, 147 Wn.2d 638, 643, 645, 56 P.3d 542 (2002). Because the failure to give a unanimity

14

instruction is an error of constitutional magnitude, a defendant may raise the issue for the first time on appeal. *See State v. Locke*, 175 Wn. App. 779, 802, 307 P.3d 771 (2013), *review denied*, 179 Wn. 2d 1021 (2014).

For a criminal defendant's conviction to be constitutionally valid, a unanimous jury must conclude that the accused committed the criminal act charged. *State v. Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988). When multiple incidents are alleged, any one of which could constitute the crime charged, the jury must unanimously agree on which incident constitutes the crime. 110 Wn.2d at 411. Under these circumstances, unless the State elects which incident it will rely on for the conviction, a trial court must instruct the jury that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt. 110 Wn.2d at 411.

But the defendant is not entitled to a unanimity instruction if the evidence shows both incidents are part of one continuing course of conduct. *State v. Handran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). "We review the facts in a commonsense manner" to determine whether a particular defendant's conduct constitutes one continuing course of conduct. *State v. Fiallo-Lopez*, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995). "A continuing course of conduct requires an ongoing enterprise with a single objective." *State v. Love*, 80 Wn. App. 357, 361, 908 P.2d 395 (1996).

Here, the evidence shows that Murphy had three different possible objectives for the marijuana in his possession: Durosimi's medical use, Murphy's personal use, and delivery to relatives in exchange for reimbursement in either cash or some other remuneration. The evidence in the record conflicts as to whether the marijuana in Durosimi's apartment was for

Durosimi's medical use, Murphy's personal use, delivery to relatives in exchange for payment, or a mix of all three. More importantly, the record contains little to no evidence concerning the objective behind the marijuana in Murphy's pants pocket. Reviewing the facts in a commonsense manner, the evidence does not show any single objective connecting the marijuana in Murphy's shorts pocket to the marijuana in Durosimi's apartment. Thus, Murphy's two instances of possession do not constitute a continuing course of conduct, and Murphy was entitled to a unanimity instruction.

We review failure to give a multiple acts unanimity instruction under the constitutional harmless error standard. *State v. Bobenhouse*, 166 Wn.2d 881, 893, 214 P.3d 907 (2009). Under this standard, the error is presumed to be prejudicial and the State bears the burden of proving that the error was harmless beyond a reasonable doubt. *State v. Ashcraft*, 71 Wn. App. 444, 466, 859 P.2d 60 (1993). An error is not harmless if a rational trier of fact could have had a reasonable doubt one of the incidents established the crime beyond a reasonable doubt. *State v. Camarillo*, 115 Wn.2d 60, 65, 794 P.2d 850 (1990).

Here, the State does not argue that the error was harmless. But even had the State argued that the error was harmless, its argument would fail in this case. A rational jury could find that Murphy constructively possessed the marijuana in Durosimi's apartment with intent to deliver it, but actually possessed the marijuana in his shorts pocket for personal use without intent to deliver. A rational jury could also find that Murphy actually possessed the marijuana in his shorts pocket with intent to deliver, but that because Murphy grew the marijuana in Durosimi's apartment for Durosimi only, Durosimi had dominion and control over, and thus constructive possession of, that marijuana. Therefore, because a rational juror could have a reasonable doubt

as to each alleged incident of possession of marijuana with intent to deliver, the error was not harmless, and we reverse Murphy's conviction for possession of marijuana with intent to deliver.

### III. DOUBLE JEOPARDY

Murphy argues, and the State concedes, that double jeopardy's merger doctrine precludes Murphy's second degree assault conviction. We accept the State's concession.

We review double jeopardy claims de novo. *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005). The constitutional prohibition against double jeopardy forbids multiple punishments for the same offense. *State v. Kier*, 164 Wn.2d 798, 803, 194 P.3d 212 (2008). Whether two convictions are for the same offense is a question of legislative intent. *Freeman*, 153 Wn.2d at 771. Of the double jeopardy analysis's many steps, merger is just one. *See* 153 Wn.2d at 771-73. Because Murphy's argument and the State's concession is limited to merger, we confine our analysis accordingly. *See* RAP 10.3(6).

Under the merger doctrine, when a criminal act forbidden under one statute also elevates the degree of a crime under another statute, the courts presume that the legislature intended to punish both acts through a single conviction for the greater crime. *Freeman*, 153 Wn.2d at 772-73. But offenses may still be punished separately "if there is an independent purpose or effect to each." 153 Wn.2d at 773.

Robbery, the taking of property by the use or threatened use of force, becomes first degree robbery when done by a person who is armed with or displays a deadly weapon. *See* RCW 9A.56.190, .200(a)(i)-(ii). Here, Murphy was convicted of second degree assault for displaying a deadly weapon to Ricky. It was this very act of displaying a deadly weapon to Ricky that elevated Murphy's robbery to first degree robbery. Neither offense had an

independent purpose or effect. Thus, we accept the State's concession, hold that the convictions merge for double jeopardy purposes, and vacate Murphy's second degree assault conviction.

## IV. COMPARABILITY OF PRIOR OREGON OFFENSES

Murphy argues that his four offenses under Oregon's statute prohibiting unlawful delivery of an imitation controlled substance are not legally or factually comparable to Washington's delivery of an imitation controlled substance. We hold that the offenses are not legally comparable, and that only one of Murphy's four offenses are factually comparable.[10]

In Oregon, Murphy was convicted of three counts of unlawful delivery of an imitation controlled substance and one count of attempted unlawful delivery of an imitation controlled substance. Regarding these four convictions, Murphy was first convicted of unlawful delivery of an imitation controlled substance in 2006. The judgment states that Murphy was convicted by guilty plea, but the guilty plea is not in the record.[11] The information does not clarify what substance Murphy actually delivered, but states Murphy falsely represented the substance to be crack cocaine.

Murphy was next convicted of unlawful delivery of an imitation controlled substance in another 2006 case. In his plea, Murphy admitted: "I knowingly delivered a substance that was not a controlled substance upon the representation that it was crack cocaine." CP at 100. The information does not clarify what substance Murphy actually delivered.

---

[10] While one of Murphy's offenses is an *attempt* to unlawfully deliver an imitation controlled substance, we limit our consideration to the underlying offense of unlawful delivery of an imitation controlled substance because that underlying offense provides the substantive elements of Murphy's *attempt* offense. *See* OR. REV. STAT. § 161.405(1) (2009); OR. REV. STAT. § 475.912 (2009).

[11] It appears that Murphy failed to appear and was convicted in absentia.

Murphy was next convicted of unlawful delivery of an imitation controlled substance in 2007. In his plea, Murphy admitted: "I intentionally sold fake crack cocaine as real crack cocaine." CP at 105.

Finally, Murphy was convicted of attempted unlawful delivery of an imitation controlled substance in 2009. The judgment states Murphy was convicted by guilty plea, but only the first page of Murphy's plea is in the record. This first page does not contain Murphy's signature, nor any information as to what acts he admitted. The information does not clarify what substance Murphy actually attempted to deliver.

We review a trial court's offender score calculations de novo. *State v. Tili*, 148 Wn.2d 350, 358, 60 P.3d 1192 (2003). A defendant may challenge the trial court's offender score calculations for the first time on appeal. *In re Pers. Restraint of Call*, 144 Wn.2d 315, 331-32, 28 P.3d 709 (2001).

To include an out-of-state conviction in the defendant's offender score, the out-of-state conviction must be comparable to a Washington offense. *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005); *see* RCW 9.94A.525(3). The statutes effective at the time the defendant committed the foreign offense control our comparability analysis. *State v. Morley*, 134 Wn.2d 588, 606, 952 P.2d 167 (1998); *see In re Pers. Restraint of Crawford*, 150 Wn. App. 787, 794-95, 209 P.3d 507 (2009).

To determine whether a foreign offense is comparable to a Washington offense, we apply a two-part test. *Morley*, 134 Wn.2d at 605-06. First, we compare the foreign offense's elements with the comparable Washington offense's elements to determine whether they are legally comparable. *State v. Ford*, 137 Wn.2d 472, 479, 973 P.2d 452 (1999). Offenses are legally

comparable if their elements are identical or if the foreign offense is not broader than the Washington offense. *See Ford*, 137 Wn.2d at 479. If the offenses are legally comparable, our analysis ends. *State v. Stockwell*, 129 Wn. App. 230, 235, 118 P.3d 395 (2005), *aff'd* 159 Wn.2d 394, 150 P.3d 82 (2007).

If the offenses are not legally comparable, we examine whether the offenses are factually comparable. *State v. Thomas*, 135 Wn. App. 474, 480, 144 P.3d 1178 (2006). Offenses are factually comparable if the defendant's conduct constituting the foreign offense, as evidenced by the undisputed facts in the foreign record, would constitute the Washington offense. 135 Wn. App. at 480. In this inquiry into factual comparability, the trial court can consider only facts that were proved to a trier of fact beyond a reasonable doubt or that the defendant admitted or stipulated to. 135 Wn. App. at 482. The State bears the burden of providing sufficient evidence to prove by a preponderance of the evidence that a foreign offense is comparable with a Washington offense. *Ford*, 137 Wn.2d at 479-80; *State v. McCorkle*, 137 Wn.2d 490, 495, 973 P.2d 461 (1999).

OR. REV. STAT. § 475.912(1) (2009) defines Oregon's offense of "unlawful delivery of an imitation controlled substance":

> A person commits the crime of unlawful delivery of an imitation controlled substance if the person knowingly:
>
> > (a) Delivers, other than by administering or dispensing, a substance that is not a controlled substance upon the express or implied representation that the substance is a controlled substance; or
>
> > (b) Delivers a substance that is not a controlled substance upon the express or implied representation that the substance is of such nature or appearance that the recipient of the delivery will be able to distribute the substance as a controlled substance.

No. 44763-1-II

RCW 69.52.030(1) defines Washington's offense of "delivery of an imitation controlled substance":

> It is unlawful for any person to manufacture, distribute, or possess with intent to distribute, an imitation controlled substance.

RCW 69.52.020(3) provides Washington's definition of "imitation controlled substance":

> [A] substance that is not a controlled substance, but which by appearance or representation *would lead a reasonable person to believe* that the substance is a controlled substance. Appearance includes, but is not limited to, color, shape, size, and markings of the dosage unit.

(Emphasis added.)

A.    *Legal Comparability*

Murphy argues that the four Oregon offenses are not legally comparable to Washington's delivery of an imitation controlled substance because only the Washington offense required proving that the uncontrolled substance actually delivered would lead a reasonable person to believe that the substance is a controlled substance. We agree.

Oregon's unlawful delivery of an imitation controlled substance required that the defendant deliver an uncontrolled substance with a representation that the substance is a controlled substance, but unlike Washington's delivery of an imitation controlled substance, did not require that the uncontrolled substance by appearance or representation would lead a *reasonable person* to believe that the substance is a controlled substance. Thus, a defendant who delivered an uncontrolled substance that no reasonable person would consider to be a controlled substance with a representation that it was a controlled substance could be convicted under Oregon's unlawful delivery of an imitation controlled substance but not Washington's delivery

21

of an imitation controlled substance. Thus, the Oregon offense is broader than the Washington offense, and the offenses are not legally comparable.

B.    *Factual Comparability*

Because the four disputed Oregon offenses are not legally comparable, we next determine whether the State provided sufficient evidence to prove by a preponderance of the evidence that these Oregon offenses are factually comparable. We hold the State provided sufficient evidence to prove only one of the four disputed Oregon convictions factually comparable.

For Murphy's two 2006 convictions of Oregon's unlawful delivery of an imitation controlled substance and his 2009 conviction of Oregon's attempted unlawful delivery of an imitation controlled substance, the State failed to provide any admission or stipulation by Murphy, or any other evidence concerning the nature of the actual substance that he delivered or attempted to deliver. Thus, the State provided no evidence that Murphy delivered or attempted to deliver an uncontrolled substance that by appearance or representation would lead a *reasonable person* to believe that it is a controlled substance. Therefore, the State failed to provide sufficient evidence to prove with a preponderance of the evidence that these three prior Oregon convictions are factually comparable with Washington's delivery of an imitation controlled substance, and the trial court erred by including these convictions in Murphy's offender score.

For the 2007 conviction of Oregon's unlawful delivery of an imitation controlled substance, the State provided evidence to show Murphy admitted that the uncontrolled substance he actually delivered was "fake crack cocaine." CP at 105. By its very description, fake crack cocaine would lead a reasonable person to believe that the substance was the controlled

substance crack cocaine. Thus, the State provided sufficient evidence to prove by a preponderance of the evidence that this conviction for Oregon's unlawful delivery of an imitation controlled substance is factually comparable with Washington's delivery of an imitation controlled substance.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Murphy argues that trial counsel provided ineffective assistance by failing to move to suppress evidence on grounds that the warrant's firearm clause or photograph clause was overbroad. We disagree.

Because ineffective assistance of counsel claims present mixed questions of law and fact, we review them de novo. *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001). On an ineffective assistance of counsel claim, the defendant bears the burden of showing deficient performance and resulting prejudice. *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011).

Counsel's performance was deficient if it fell below an objective standard of reasonableness. *Stenson*, 132 Wn.2d at 705. Our scrutiny of counsel's performance is highly deferential; it strongly presumes reasonableness. *Grier*, 171 Wn.2d at 42. To rebut this presumption, the defendant bears the heavy burden of "establishing the absence of any 'conceivable legitimate tactic explaining counsel's performance.'" 171 Wn.2d at 42 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). To establish prejudice, a defendant must show a reasonable probability that the result of the proceeding would have been different absent the deficient performance. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987).

23

A defendant must show both deficiency and prejudice to prevail on an ineffective assistance of counsel claim. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012). Thus, where we determine that the defendant has failed one prong of the ineffective assistance of counsel test, we need not consider the other. 174 Wn.2d at 847.

As discussed above, it is not likely that the trial court would have excluded any evidence in response to a motion to suppress challenging the firearm clause or photograph clause except for the detectives' photograph of the picture hanging on Durosimi's apartment wall. Murphy makes no arguments on appeal related to the photograph of the picture hanging on Durosimi's apartment wall and did not designate this photograph on appeal. Nothing in the record before us suggests that this photograph affected the trial in any way. Thus, Murphy has failed to show a reasonable probability that but for counsel's failure to move to suppress evidence on grounds of the warrant's firearm clause or photograph clause, the result of the proceeding would have been different. Therefore, Murphy has failed to meet his burden of showing that counsel's failure to move to suppress on these grounds caused prejudice.

## VI. ADDING THE SCHOOL BUS ROUTE STOP ENHANCEMENT TO EACH CHARGE

Murphy argues, and the State concedes, the trial court erroneously added the possession of marijuana with intent to deliver conviction's 24-month school bus route stop enhancement to the standard sentence range for first degree robbery and second degree assault. We accept the State's concession.

This court reviews calculation of a standard sentence range de novo. *See State v. Parker*, 132 Wn.2d 182, 189, 937 P.2d 575 (1997). Sentencing errors resulting in unlawful sentences

may be raised for the first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008).

> RCW 69.50.435(1) states:
>
> Any person who violates RCW 69.50.401 by . . . possessing with the intent to manufacture, sell, or deliver a controlled substance . . . to a person . . . (c) [w]ithin one thousand feet of a school bus route stop designated by the school district . . . may be punished by . . . imprisonment of up to twice the imprisonment otherwise authorized by this chapter.

RCW 9.94A.533(6) states in part:

> An additional twenty-four months shall be added to the standard sentence range for any ranked offense involving a violation of chapter 69.50 RCW if the offense was also a violation of RCW 69.50.435.

The school bus route stop enhancement applies to only sentences for violations of chapter RCW 69.50. *See* RCW 9.94A.533(6). Neither first degree robbery nor second degree assault constitutes a violation of chapter RCW 69.50. RCW 9A.36.021; RCW 9A.56.200.

RCW 9.94A.533(3) adds a 60 month firearm enhancement to any class A felony conviction, and 36 months to any class B felony conviction, where the defendant was armed with a firearm. First degree robbery is a class A felony. RCW 9A.56.200(2). Second degree assault without sexual motivation is a class B felony. RCW 9A.36.021(2).

RCW 9.94A.533(3)'s 60-month firearm enhancement was the only enhancement that applied to Murphy's standard sentence range for first degree robbery, and RCW 9.94A.533(3)'s 36-month firearm enhancement was the only enhancement that applied to Murphy's standard sentence range for second degree assault. But the trial court erroneously increased the standard sentence range for Murphy's first degree robbery and second degree assault convictions by an additional 24 months above the applicable firearm enhancements, apparently to account for the

25

24-month school bus route stop enhancement that applies only to violations of chapter RCW 69.50. Thus, we hold that the trial court erroneously calculated the standard sentence range for first degree robbery and second degree assault.[12]

## STATEMENT OF ADDITIONAL GROUNDS

Murphy filed a statement of additional grounds (SAG). When considering a defendant's SAG, we consider only arguments that we have not addressed as raised by defendant's appellate counsel. *State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012), *review denied*, 176 Wn.2d 1023 (2013).

### I. DOUBLE JEOPARDY

Murphy argues that double jeopardy's merger doctrine precludes Murphy's second degree assault conviction. Because we addressed this issue as raised by Murphy's appellate counsel, we need not consider it again.

### II. FIREARM ENHANCEMENTS

Murphy argues that the trial court erred by running his first degree robbery conviction's firearm enhancement consecutively with his second degree assault conviction's firearm sentencing enhancement. Because we vacate Murphy's second degree assault conviction, only one firearm sentencing enhancement will be applied at resentencing, and this issue is moot.

---

[12] Murphy argues that adding the school bus route stop enhancement to Murphy's first degree robbery and second degree assault sentences was unconstitutional. Because we resolve this error through statutory interpretation, we avoid considering this constitutional issue. *State v. McEnroe*, 179 Wn.2d 32, 35, 309 P.3d 428 (2013).

CONCLUSION

We affirm Murphy's first degree robbery conviction, but vacate his sentence for that crime. We vacate Murphy's conviction for second degree assault and the associated firearm sentencing enhancement. We vacate Murphy's conviction for possession of marijuana with intent to deliver and the associated school bus route stop sentencing enhancement. We remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Lee, J.

_____
Sutton, J.