[No. 33886-2-I.   Division One.   January 16, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. KENNYE RAYE LOVE, *Appellant*.

---

69.53.010(1) by knowingly acquiescing in such activity by a tenant or subtenant. *See State v. Sigman*, 118 Wn.2d 442, 447-48, 826 P.2d 144, 24 A.L.R.5th 856 (1992). The landlord can defend a charge of violating RCW 69.53.010(1) by proving that he or she made a good faith effort to contact the police, or has initiated an unlawful detainer action. *See* RCW 69.53.010(2).

*Colleen E. O'Connor* of *Washington Appellate Defender Association*; and *Nielsen & Acosta*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Peter J. Stokstad, Deputy*, for respondent.

KENNEDY, A.C.J. — Kennye Raye Love appeals his jury conviction of one count of possession of a controlled substance with intent to deliver, contending that his constitutional right to a unanimous jury was violated in that the evidence of intent was based on two separate acts of possession, the State failed to elect between the two, and the trial court failed to give a unanimity instruction. Concluding that each possession with intent to deliver was indicative of a continuing course of conduct, so that the State was not required to elect and no unanimity instruction was required, we affirm.[1]

## FACTS

Sergeant Steve Paulsen and his team of officers were conducting surveillance of Love's residence in preparation for execution of a search warrant upon Love and his resi-

---

[1]We treat the remainder of Love's contentions in the unpublished portion of this opinion.

dence when Paulsen saw Love exiting his residence. Paulsen notified his officers that Love was leaving in his car. The officers stopped Love two to three blocks from his residence. They told Love that they were serving a narcotics search warrant on him, and to get out of the car. As one of the officers was patting Love down for weapons, he felt a bulge in Love's pocket. Reaching in, the officer pulled out a lip balm container. The officer rattled the container, and then opened it up, finding five rocks of cocaine inside. Love was then placed under arrest.

Paulsen and other officers then executed the search warrant on Love's residence. The officers recovered 40 additional rocks of cocaine from a desk in the office room. The officers also recovered guns, a large sum of money, plastic bindles, two scales, a cocaine pipe and a scanner.

At trial, Love contended that the money found at his residence was given to him for safekeeping by his friends, and that the police officers planted the lip balm container of cocaine in his pocket, as well as the cocaine in his house.

During closing argument, the State argued Love intended to deliver the five rocks of cocaine found on his person, as well as the 40 rocks found in his residence. The State pointed out that when Love was searched he did not possess any paraphernalia, indicating that the five rocks were not for Love's personal use. In addition, the prosecutor argued that five rocks of cocaine were more than would be considered consistent with personal use, and that the evidence found in Love's residence indicated that the cocaine found there also was intended for delivery. The prosecutor contended that the large amount of cash, the gram scale and packaging materials, and the guns all were consistent with a drug trafficking operation.

In his closing argument, Love argued that the cocaine found on him and in his home was not his; that the police officers had planted the drugs in order to arrest him and take money from his home. Love argued further that none of the other items seized from his home was unlawful, and that absent the planted drugs, none of these items was necessarily indicative of a drug trafficking operation.

In rebuttal, the State argued that all of the evidence must be considered together; although the evidence seized from Love's home was not necessarily indicative of drug trafficking when considered in isolation, when considered in conjunction with the large quantity of drugs, it provided strong circumstantial evidence that Love was engaged in drug trafficking.

Love was convicted of one count of possession of a controlled substance with intent to deliver. He now appeals his conviction.

## DISCUSSION

■ Love contends that during closing argument the prosecutor argued that the jury could base its finding of intent to deliver either on the five rocks of cocaine Love possessed at the time of his arrest, or on the 40 rocks of cocaine, the guns, the packaging materials, the scale, the scanner and the cash found inside Love's residence. Therefore, Love contends, the trial court erred in failing to give an unanimity instruction to the jury.[2]

We do not agree with Love's characterization of the prosecutor's closing argument. Before summarizing the evidence of intent attendant to each possession, the prosecutor stated: "The evidence shows that the defendant intended to sell the cocaine that was found on him and in his house. Let's look at the indicia of intent." Verbatim Report of Proceedings at 578. The State's theory at trial was that Love was a drug trafficker engaging in a continuous course of unlawful conduct.

A defendant may be convicted only when a unanimous jury concludes that the criminal act charged in the information has been committed. *State v. King*, 75 Wn. App. 899, 902, 878 P.2d 466 (1994), *review denied*, 125 Wn.2d 1021 (1995). Where the State charges one count of criminal conduct and presents evidence of more than one crim-

---

[2]Because this error is of constitutional magnitude, Love may raise it on appeal, even though he did not propose a unanimity instruction. *State v. Camarillo*, 115 Wn.2d 60, 63 n.4, 794 P.2d 850 (1990).

inal act, there is a danger that a conviction may not be based on a unanimous jury finding that the defendant committed any given single criminal act. *State v. Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988). In order to ensure jury unanimity, the State must elect a single act upon which it will rely for conviction, or the jury must be instructed that all must agree as to what act or acts were proved beyond a reasonable doubt. *State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984).

■ Where the State presents evidence of multiple acts which indicate a "continuing course of conduct," however, neither an election nor a unanimity instruction is required. *State v. Handran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). But one continuing offense must be distinguished from several distinct acts, each of which could be the basis for a criminal charge. *Petrich*, 101 Wn.2d at 571. Where evidence involves conduct at different times and places, or different victims, then the evidence tends to show several distinct acts. *Handran*, 113 Wn.2d at 17; *Petrich*, 101 Wn.2d at 571. A continuing course of conduct requires an ongoing enterprise with a single objective. *State v. Gooden*, 51 Wn. App. 615, 619-20, 754 P.2d 1000, *review denied*, 111 Wn.2d 1012 (1988). Common sense must be utilized to determine whether multiple acts constitute a continuing course of conduct. *Handran*, 113 Wn.2d at 17.

The continuing course of conduct exception has been applied to multiple acts of assault over a two-hour time period, resulting in a fatal injury, *State v. Crane*, 116 Wn.2d 315, 330, 804 P.2d 10, *cert. denied*, 501 U.S. 1237 (1991); two acts of assault occurring in one place, during a short period of time, by the same aggressor upon a single victim, in an attempt to secure sexual relations, *Handran*, 113 Wn.2d at 17; two acts taken collectively which promote prostitution, *Gooden*, 51 Wn. App. at 620; and two acts of assault for the purpose of intimidating a witness, *United States v. Berardi*, 675 F.2d 894 (7th Cir. 1982).

The only Washington case which has considered the continuing course of conduct exception with respect to a

drug possession conviction is *State v. King*, 75 Wn. App. 899. In *King*, as police officers made a traffic stop they noticed the passenger, King, trying to reach down between the seat of the car. As King stepped from the car, an officer saw King toss something toward the car's interior. The officer then noticed that King's fanny pack was unzipped. As the driver exited the car, he seemingly discarded something, as well. Upon searching the car, the officers found a bottle containing cocaine between the seats, but were unable to determine whether the bottle belonged to King or the driver. King was arrested; at the precinct, King's fanny pack was searched and another rock of cocaine was found. King was charged with one count of VUCSA possession, and tried without a unanimity instruction. At the trial, the State presented evidence both of the cocaine found in the car and that found in the fanny pack, and failed to elect the cocaine upon which it relied for conviction.

In considering whether the two instances of possession constituted a continuing course of conduct, the *King* court stated: "The State's evidence tended to show two distinct instances of cocaine possession occurring at different times, in different places, and involving two different containers . . . . One alleged possession was constructive, the other actual." *King*, 75 Wn. App. at 903.

■ This case is distinguishable. Love was charged with possession with intent to deliver. Love's possession of the five rocks of cocaine on his person and the 40 rocks in his residence, when considered in conjunction with the other evidence of an ongoing drug trafficking operation found at Love's residence, reflect his single objective to make money by trafficking cocaine; thus, both instances of possession constituted a continuous course of conduct. The inference is strengthened by the fact that Love, who possessed no paraphernalia, was searched within minutes of leaving his residence where the much larger stash was kept, and was found to possess five rocks of cocaine in an easily concealed but readily accessible container.

In *King*, the defendant denied all knowledge of the cocaine found in the car, and contended that the police must have planted the cocaine found in his fanny pack. A rational juror hearing the evidence in *King* could have believed that that the cocaine found in the car belonged to the driver, and that the cocaine found in the fanny pack belonged to King. An equally rational juror hearing the same evidence could have believed that King constructively possessed the cocaine found in the car, but that the police planted that found in the fanny pack, in order to link King more closely with the cocaine found in the car. Thus, King could have been convicted of the single count of possession by a less than unanimous jury. Here, Love contended that the police planted a total of 45 rocks of cocaine, 5 onto his person, and 40 at his home, leaving the jury with no rational basis to distinguish the cocaine found on Love from that at his home. Either the police planted it all, or the police planted none of it. If the police planted none of it, the jury was left with no rational basis to conclude that Love possessed the cocaine found on his person for personal use, and that found at the residence with intent to deliver.

On this evidence, in the face of this defense, Love may rest assured, as do we, that the jury found him guilty of a single count of possession with intent to deliver based on substantial evidence of a continuing course of conduct involving an ongoing enterprise with a single objective. Accordingly, the State was not required to elect the possession upon which it would rely, and the court was not required to give a unanimity instruction.

Affirmed.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports, and that the remainder will be filed of public record pursuant to RCW 2.06.040, it is so ordered.

364

AGID and BECKER, JJ., concur.

Review denied at 129 Wn.2d 1016 (1996).