984 P.2d 453 (1999)
STATE of Washington, Respondent,
v.
Katherine GARMAN, Appellant.
State of Washington, Respondent,
v.
Melvin C. Koerber, Appellant.
State of Washington, Respondent,
v.
Penny H. Pedersen, Appellant.
State of Washington, Respondent,
v.
Diane L. Gimenez, Appellant.
Nos. 39248-4-I, 39441-0-I, 39438-0-I, 39249-2-I.
Court of Appeals of Washington, Division 1.
September 20, 1999.
As Corrected October 4, 1999.
*454 Thomas Kummerow, Washington Appellate Project, Rita Griffith, Griffith & Cole, PLLC, Eric Broman, Nielsen & Broman & Assoc., Seattle, Malcolm Templeton, North Bend, for Appellants.
King County Prosecuting Attorney Appellate Unit, Scott Peterson, Seattle, for Respondent.
WEBSTER, J.
This case involves a purported theft scam perpetrated by employees of the City of Seattle. The State charged each defendant with one count of first degree theft and one count of conspiracy to commit first degree theft. The State presented evidence of a computer scheme used to steal money, as well as evidence of other means used to steal money.
The primary issue on appeal is whether a unanimity instruction was required as to the "other" methods used to steal money, or whether such evidence may be considered as part of the defendants' continuing course of conduct. We hold that a unanimity instruction is not required where (1) a defendant is charged with a single count of theft based on a common scheme or plan, (2) the evidence indicates multiple incidents of theft from the same victim, (3) the multiple transactions are aggregated for charging purposes, (4) the jury is instructed on the law of aggregation, and (5) the to-convict instruction for the theft charge requires the jury to find that the multiple incidents are part of "a common scheme or plan, a continuing course of conduct, and a continuing criminal impulse." We conclude that in such a case, the multiple incidents of theft may be considered as part of a continuing course of conduct. We affirm

FACTS
The City of Seattle's Solid Waste Utility Department operates "transfer stations," which are recycling and disposal centers. A vehicle desiring to unload chargeable items (such as yard material) must weigh in at the inbound scale house. After unloading, the vehicle then weighs out at the outbound scale house, and is assessed a fee based on the rate and weight of the unloaded material.
Katherine Garman, Diane Gimenez, Penny Pedersen, Melvin Koerber, and Christopher Boone worked as scale house attendants at the transfer stations. They were responsible for weighing the vehicles, checking the loads, and collecting the fees. On May 26, 1995, they were each charged by information with one count of first degree theft and one count of criminal conspiracy to commit first degree theft. Pedersen, Koerber, and Boone[1] pleaded guilty to first degree theft. Garman and Gimenez were tried jointly. The following testimony was presented at their trial:
Boone testified that he had stumbled upon a way to steal money from the transfer stations without arousing any suspicion of missing revenue. The computer system in place at the time allowed a scale house attendant to generate a customer receipt for payment of fees without having the fee appear as income on the daily journal logs. This was accomplished by rebooting the computer in the middle of the transaction  after the computer had automatically generated a receipt, *455 but before the electronic information had been successfully transferred to the printer for the daily journal roll.
One could then pocket the money the customer paid without alerting the station to any loss of revenue. This is because when a transaction was voided in such fashion, it was simply recorded on the journal log as an "unclosed transaction," but there was no record of the dollar amount or value of the transaction that had been voided.[2] Boone discovered this rebooting scheme by using the shortcut rebooting method (pressing the keys control-alt-delete at the same time).
Boone testified that he told Koerber about the scam. He further stated that he divided the scam money with Koerber, Garman, and Pedersen. His testimony was corroborated by another employee at the transfer station, who testified that Koerber had showed her the rebooting scheme and informed her that Boone, Pedersen, and Garman were involved in it.
Koerber and Pedersen also testified at Garman's and Gimenez's trial. Koerber stated that he split scam money with Boone and Garman when he worked with them. Pedersen testified that Gimenez taught her the rebooting scheme, and that they divided the money together several times.
Garman and Gimenez each took the stand. Garman explained that she participated in the rebooting scheme after Koerber showed it to her, but that she did not take more than $1,200. She also admitted that a customer named Robert Lewis paid her $1,500 in exchange for letting him make unrecorded (unassessed or uncharged) trips to the transfer station. She testified that although she accepted the money, she eventually thought better of it and repaid him $1,400.
Gimenez, on the other hand, denied any involvement whatsoever in the rebooting scheme. She also explained that there was one occasion where she reported $500 missing from her cash drawer, but testified that she did not steal the $500.
The jury convicted Garman of first degree theft and conspiracy to commit first degree theft. She received an exceptional sentence of 10 months' confinement for each count, to be served concurrently. The jury found Gimenez guilty of second degree theft and conspiracy to commit first degree theft. She received an exceptional sentence of nine months' confinement for each count, to be served concurrently.
Garman and Gimenez appeal their convictions as well as their orders of restitution, and Koerber and Pedersen appeal their orders of restitution. All four cases have been consolidated on appeal. The issues presented are as follows: Garman and Gimenez both argue that the trial court erred by failing to provide a unanimity instruction, and by failing to dismiss the charges for preaccusatorial delay. Garman individually contends that (1) she was entitled to have the jury instructed on the defense of duress, and (2) her constitutional right to confrontation was violated by the admission of Lewis's statement.
Gimenez individually contends that (1) the to-convict instructions for both charges erroneously included a nine-day period that was beyond the statute of limitations, (2) the to-convict instruction for the conspiracy charge was deficient for failing to list the elements of the underlying offense, (3) this court should review the trial court's in camera inspection of a witness's personnel file, (5) the trial court miscalculated her offender score by applying the "wash-out" provision that was in effect at the time of sentencing, and (6) the trial court's reasons for imposing an exceptional sentence are unjustified. Finally, all four appellants challenge their orders of restitution.

DISCUSSION

A. Unanimity Instruction: "Continuing Course of Conduct"

A jury may convict a defendant only if it unanimously concludes that the defendant *456 committed the act charged in the information. State v. Kitchen, 110 Wash.2d 403, 409, 756 P.2d 105 (1988). Thus, "[w]here the State presents evidence of several distinct acts, any one of which could be the basis of a criminal charge, the trial court must ensure that the jury reaches a unanimous verdict on one particular incident." State v. Handran, 113 Wash.2d 11, 17, 775 P.2d 453 (1989); see State v. Petrich, 101 Wash.2d 566, 572, 683 P.2d 173 (1984).
To ensure jury unanimity, either the State must elect which act constituted the crime or the trial court must instruct the jury to agree on a specific criminal act. Kitchen, 110 Wash.2d at 409, 756 P.2d 105. However, a unanimity instruction is not necessary where the evidence indicates a "continuing course of conduct." Handran, 113 Wash.2d at 17, 775 P.2d 453; Petrich, 101 Wash.2d at 571, 683 P.2d 173. To determine whether criminal conduct constitutes one continuing act, we evaluate the facts in a "commonsense manner." Handran, 113 Wash.2d at 17, 775 P.2d 453. "A continuing course of conduct requires an ongoing enterprise with a single objective." State v. Love, 80 Wash.App. 357, 361, 908 P.2d 395 (1996). But where evidence involves conduct at different times and places, or different victims, then the evidence tends to show several distinct acts. Id.
Here, the State made no election and the trial court did not provide the jury with a unanimity instruction. Both Garman and Gimenez contend that a unanimity instruction was required because the State presented evidence of multiple acts, any one of which could be the basis of the theft charge. In addition to presenting evidence of the computer rebooting scheme, the State presented evidence that Lewis paid Garman $1,500 in exchange for unrecorded or unassessed trips to the transfer station. The State also presented evidence implicating Gimenez in the disappearance of $500 from her cash drawer. The State argues that the Lewis transaction and the $500 incident are acts that fall under the "continuing course of conduct" exception because they were committed in furtherance of the same objective as the rebooting scheme  to simply steal revenue from the transfer station.[3]
We agree that the evidence demonstrates a continuing course of conduct under the circumstances of this case. The defendants were not charged with individual acts of theft, but were instead charged with one count of theft as based on a common scheme or plan. That is, the information charged Garman and Gimenez with first degree theft, "a crime of the same or similar character as another crime charged herein [conspiracy to commit theft], which crimes were part of a common scheme or plan...." Similarly, the information charged them with criminal conspiracy to commit first degree theft, "a crime of the same or similar character as another crime charged herein, which crimes were part of a common scheme or plan...." As such, the to-convict instruction for the theft charge specifically required the jury to find "[t]hat the defendant's acts were part of a common scheme or plan, a continuing course of conduct, and a continuing criminal impulse..."
In other words, the State chose to prosecute the case using the doctrine of aggregation:
Aggregation of individual transactions to meet the threshold for a particular degree of theft is allowed by common law and by statute.
The common law allows aggregation of a series of thefts, so long as the thefts are from the same owner and the same place and result from a single criminal impulse pursuant to a general larcenous scheme. The common law also allows aggregation of thefts from the same victim over a period of time or from several victims at the same time and place, if the takings are part of a common scheme or plan. But, the common law does not allow aggregation of thefts from different victims at different times and places. *457 State v. Atterton, 81 Wash.App. 470, 472, 915 P.2d 535 (1996) (citations omitted); see RCW 9A.56.010(17)(c). Under the law of aggregation, the question of whether successive takings are the result of a single, continuing criminal impulse or intent executed as part of a general larcenous scheme or plan is a factual question for the jury. State v. Reid, 74 Wash.App. 281, 290-91, 872 P.2d 1135 (1994); State v. Eppens, 30 Wash.App. 119, 125, 633 P.2d 92 (1981); State v. Vining, 2 Wash.App. 802, 808-09, 472 P.2d 564 (1970).
Given the State's election to pursue the case under the theory of aggregation, the to-convict instruction for the theft charge explicitly required the jury to find that the acts were part of a "continuing course of conduct." Thus, due to the manner in which the defendants were charged and by which the case was prosecuted, the jury was specifically required to find the existence of a common scheme or plan in order to convict Garman and Gimenez of theft. We therefore conclude that under these circumstances, evidence of the Lewis transaction and the $500 disappearance were part of a continuing course of conduct, and a unanimity instruction was not required. Cf. State v. Doogan, 82 Wash.App. 185, 191, 917 P.2d 155 (1996) ("Under appropriate facts, either advancing prostitution or profiting from prostitution can be charged as a continuous course of conduct exempt from the rule of Petrich.").
Garman and Gimenez do not challenge the State's ability to aggregate the multiple transactions. Rather, they contend that the law of aggregation has no bearing on the issue of whether the continuing course of conduct exception is applicable. But as shown above, the two doctrines become intertwined and, in essence, achieve the same objective where the State prosecutes a case using the theory of aggregation. That is, they both ensure that a defendant is convicted only where the multiple incidents are part of a continuing course of conduct.
Garman argues that "[if] the jury was instructed that they must find whether the multiple acts were separate and distinct criminal acts or continuous conduct," then a unanimity instruction becomes necessary in the event the jury finds that the acts were separate and distinct and convicts the defendants. Reply of Garman, at 2. But Garman overlooks one critical fact: Under the to-convict instructions given in our case, the jury was explicitly instructed to return a verdict of "not guilty" if it found that the acts were not part of "a common scheme or plan, a continuing course of conduct, and a continuing criminal impulse."[4] Furthermore, the jury was instructed on the law of aggregation.[5] Thus, there is no danger in our case *458 that the jury found the acts to be separate and distinct, but nevertheless convicted. See State v. Lough, 125 Wash.2d 847, 864, 889 P.2d 487 (1995) (a jury is presumed to follow the trial court's instructions).
We therefore hold that a unanimity instruction is not required where (1) a defendant is charged with a single count of theft based on a common scheme or plan, (2) the evidence indicates multiple incidents of theft from the same victim, (3) the multiple transactions are aggregated for charging purposes, (4) the jury is instructed on the law of aggregation, and (5) the to-convict instruction for the theft charge requires the jury to find that the multiple incidents are part of "a common scheme or plan, a continuing course of conduct, and a continuing criminal impulse." In such a case, the multiple incidents of theft may be considered as part of a continuing course of conduct. We conclude that a unanimity instruction was not required under the facts of this case.[6]
The panel having determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.
AGID, A.C.J., and COLEMAN, J., concur.
NOTES
[1] This appeal involves all of the defendants except for Christopher Boone.
[2] In other words, "unclosed transactions" (UCTs) were transactions that had not been completed; transactions that had been voided on the computer. UCTs occurred for any number of reasonsboth legitimate ("normal") and non-legitimate. For instance, a UCT would occur if the computer malfunctioned or if the scale house attendant had to void a transaction due to the entry of incorrect numbers. The rebooting scheme used in the thefts also showed up on the daily journal rolls as UCTs.
[3] The State's theory at trial was that the Lewis transaction and the $500 theft were committed only because it was more difficult to engage in the rebooting scheme on days when a defendant did not work with a co-conspirator.
[4] The to-convict instructions for the first degree theft charges were identical for both defendants. The to-convict instruction for Garman provided as follows:

To convict the defendant Katherine T. Garman of the crime of theft in the first degree, as charged in count IV, each of the following elements of the crime must be proved beyond a reasonable doubt.
(1) That during a period of time intervening between April 1, 1991 through April 1, 1993, the defendant or an accomplice exerted unauthorized control over property of another or the value thereof;
(2) That the property exceeded $1,500 in value;
(3) That the defendant intended to deprive the other person of the property;
(4) That the defendant's acts were part of a common scheme or plan, a continuing course of conduct, and a continuing criminal impulse; and
(5) That at least one act of theft by defendant or by an accomplice occurred after 5/17/92;
(6) That the acts occurred in the State of Washington.
If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to count IV.
On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty as to count IV.
(emphasis added).
[5] Instruction no. 14 provided:

Whenever any series of transactions which constitute theft would, when considered separately, constitute theft in the third degree because of value, and said series of transactions are part of a common scheme or plan, then the transactions may be aggregated in one count and the sum of the value of all said transactions shall be the value considered in determining the degree of theft involved.
Instruction no. 15 provided:
Where property is stolen from the same owner and from the same place by a series of acts there may be a series of crimes or there may be a single crime depending upon the facts and circumstances of each case. If each taking is the result of a separate, independent criminal impulse or intent, then each is a separate crime, but, where the successive takings are the result of a single continuing criminal impulse or intent and are pursuant to the execution of a general larcenous scheme or plan, such successive takings constitute a single larceny regardless of the time which may elapse between each taking.
[6] We therefore reject appellants' contention that the jury should have been provided with special verdict forms delineating the dates of the thefts.