# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  46470-5-II |
| Respondent, | |
| v. | |
| KIMBERLY SARA LELAND, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Kimberly Leland appeals her conviction for the second of two counts of second degree taking of a motor vehicle without permission.  Leland argues that her second conviction stemmed from the same course of conduct, and thus, violates double jeopardy, which the State concedes.  Leland also argues that the trial court failed to consider whether she had the present or future ability to pay its imposed legal financial obligations (LFOs) as part of her sentencing, and that her counsel's failure to object to the LFOs constituted ineffective assistance of counsel.

We hold that (1) Leland's conviction on the second count of second degree taking of a motor vehicle without permission violated double jeopardy, (2) Leland waived her objection to the LFOs because she failed to object to their imposition at sentencing, and (3) Leland fails to show that counsel's failure to object to the imposition of LFOs prejudiced the outcome of her sentencing hearing.  Accordingly, we reverse and remand to the trial court with instructions to vacate only Leland's second conviction, and for resentencing.

FACTS

On December 5, 2013, Kimberly Leland came to Connie Russell's front door asking to speak to Russell's husband. Leland was nervous and stuttering, and Russell noticed two men approach her elderly neighbor Frank Wilson's car. Russell's boyfriend came out of a back bedroom and told her to call the police because the men were stealing Wilson's car.[1] Leland then left the porch, got into the passenger side of Wilson's car, and kissed the driver on the cheek as the car drove away. Eric Marsh, Wilson's step-son, reported the car theft to the Kelso Police Department.

Wilson was elderly and infirm, and was in a nursing home after suffering a stroke in early November. Russell recognized Leland as a friend of Jesse Michelle Bridgman, her neighbor and Wilson's former caretaker. Bridgman, who Wilson fired in late-October, had often driven Wilson around in his car. According to Marsh, Bridgman, after her termination, called him and suggested that he hire her friend "Kim" as Wilson's caretaker. Verbatim Report of Proceedings (VRP) (May 27, 2014) at 44. Bridgman was also the former owner of the Cavalier.

Two days after seeing Leland get into Wilson's stolen car, Russell saw Leland driving it near her home and called the police. The next day, December 8, Russell's daughter and Wilson's caregiver, Shawna Youngblut, saw Leland driving the stolen car in Kelso. Youngblut followed it, and cornered Leland, who drove into a yard to get around Youngblut. Shortly after Youngblut cornered her, a Kelso police officer pulled Leland over. Leland told the police officer that she had responded to a Craigslist advertisement and purchased Wilson's car from an unidentified man.

_____

[1] Wilson's car was identified as a red Chevrolet Cavalier.

2

Leland did not know the name or have the contact information of the man she alleged sold her the car, and she did not have paperwork to prove she had purchased the car. Marsh testified that he intended to sell the car, but had not listed it on Craigslist or advertised it for sale.[2] No one had Marsh's permission to sell or use the car.

The State, in its second amended information, charged Leland with two counts of second degree taking of a motor vehicle without permission.[3] A jury convicted Leland of both counts.

At sentencing, Leland's counsel argued that her convictions on both counts violated double jeopardy, and that the second charge, stemming from her driving Wilson's car on December 8, was a continuing course of conduct from the December 5 vehicle theft. The trial court held that the two incidents were distinctly different because in Count I, Leland was a passenger, and in Count II, she was the driver. The trial court also stated that three days was a significant passage of time and that the crimes could not merge. The trial court sentenced Leland to four months for each count,[4] and imposed LFOs.[5] In its judgment and sentence, the trial court used boilerplate language that it found that Leland has the "ability or likely future ability" to pay the imposed LFOs.

---

[2] In October 2013, Wilson executed a durable power of attorney naming Marsh, who exercised it after Wilson's stroke and hospitalization in early November.

[3] In the alternative to the second count of second degree taking of a motor vehicle without permission, the State charged Leland with possession of a stolen vehicle.

[4] Leland's sentence for both counts ran concurrently.

[5] On the record, the trial court referred to the legal financial obligations as "standard costs." VRP (June 12, 2014) at 157. The trial court imposed the following LFOs: (1) $500 victim assessment, (2) $600 court costs, (3) $825 for the court appointed attorney, and (4) $100 felony DNA collection.

Clerk's Papers (CP) at 41. Leland did not object to the imposition of the legal financial obligations. Leland appeals her second conviction and sentence.

ANALYSIS

I. DOUBLE JEOPARDY

Leland first argues that her two convictions for second degree taking of a motor vehicle without permission violate double jeopardy because the acts constituted a single unit of prosecution. The State concedes that Leland's second conviction for second degree taking of a motor vehicle without permission violates double jeopardy and that this court should reverse and dismiss Leland's second conviction. We accept the State's concession, and reverse and dismiss Leland's second conviction and sentence for second degree taking of a motor vehicle without permission.

Both the state and federal constitutions prohibit the government from punishing a person twice for the same crime. U.S. Const. amend. V; Const. art. I, § 9; *State v. Smith*, 177 Wn.2d 533, 545, 303 P.3d 1047 (2013). A defendant's convictions for multiple violations of the same statute, focuses the double jeopardy question on the unit of prosecution intended as the punishable act under the statute. *State v. Villanueva-Gonzalez*, 175 Wn. App. 1, 5, 304 P.3d 906 (2013) (citing *State v. Westling*, 145 Wn.2d 607, 610, 40 P.3d 669 (2002)). "Two crimes manifest the 'same criminal conduct' if they 'require the same criminal intent, are committed at the same time and place, and involve the same victim." *State v. Graciano*, 176 Wn.2d 531, 540, 295 P.3d 219 (2013) (quoting RCW 9.94A.589(1)(a)). When the impulse and objective to commit a criminal act is single, it is a continuous offense, no matter how long it may continue. *Blockburger v. U.S.*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932); *State v. Love*, 80 Wn. App. 357, 361, 908 P.2d 395

4

(1996). The court uses common sense to determine whether multiple acts constitute a continuing course of conduct. *Love*, 80 Wn. App. at 361. RCW 9A.56.075(1) prohibits the act of taking a motor vehicle without the owner's permission or riding in a motor vehicle knowing it was taken without the owner's permission.

Here, Leland took Wilson's car without his permission on or around December 5, 2013. A few days later, Russell and Youngblut saw Leland driving that same car. At sentencing, the State alleged that Leland's initial taking of Wilson's car on December 5, when Leland was a passenger, and her later driving of the car on December 8 constituted two separate offenses because three days separated the acts. RCW 9A.56.075(1) requires Leland's presence and intent to take the car without permission regardless of whether she's driving or riding in the car. Her victim, Wilson, is the same for both charges. While Russel and Youngblut saw Leland with the car in two different places on two different days, the act of the taking happened at one location and at one time. When looking at the facts, common sense indicates that Leland's conduct constituted a single, continuing course of conduct. Thus, Leland's second conviction for second degree taking of a motor vehicle without permission violated double jeopardy. Accordingly, we accept the State's concession, and reverse and remand Leland's second conviction to the trial court with instructions to vacate her second conviction.

II. LEGAL FINANCIAL OBLIGATIONS

Next, Leland argues, for the first time on appeal, that the trial court erred when it imposed LFOs without making findings that she could currently or had the future ability to pay them. The State argues that Leland's failure to object to the imposition of the LFOs at sentencing waived her

5

right to object to them on appeal. Consistent with our holding in *State v. Lyle*, we decline to reach the LFO issue under RAP 2.5(a). 188 Wn. App. 848, 852, 355 P.3d 327 (2015).

Generally, this court declines to review issues raised for the first time on appeal. RAP 2.5(a). Our Supreme Court in *Blazina* noted that an appellate court may use its discretion to reach unpreserved claims of error. *State v. Blazina*, 182 Wn.2d 827, 832-33, 344 P.3d 680 (2015).

In *Lyle*, we held that, in line with our decision in *Blazina*, Lyle's failure to challenge the discretionary LFOs at his sentencing precluded him from challenging them on appeal. *Lyle*, 188 Wn. App. at 852; *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492 (2013). Similarly, Leland had the benefit of this court's decision in *Blazina* prior to her sentencing and notice that the failure to object to the discretionary LFOs during sentencing waived her claim of error on appeal. *Lyle*, 188 Wn. App. at 852. Thus, we decline to reach Leland's LFO claims.

III. INEFFECTIVE ASSISTANCE OF COUNSEL

Leland further argues that defense counsel provided ineffective assistance of counsel when he failed to object to the imposition of the LFOs at her sentencing hearing. Because Leland fails to show that counsel's failure to object to the imposition of the LFOs prejudiced her, we disagree.

We review an ineffective assistance of counsel claim de novo, and presume that counsel's performance was adequate and reasonable. *Strickland v. Wash.*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). To prevail on a claim for ineffective assistance of counsel, the appellant must show that counsel's performance was deficient and that "'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Grier*, 171 Wn.2d at 34 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). Conduct

categorized as legitimate trial tactics or strategies, it is not deficient performance. *Grier*, 171 Wn.2d at 33. Our courts have found that, during sentencing, "most defendants are motivated to portray themselves in a more positive light," and many defendants consciously choose not to argue that they will be perpetually unemployed and indigent. *State v. Duncan*, 180 Wn. App. 245, 250-51, 327 P.3d 699 (2014).

Here, there is no evidence in the record which Leland points to that supports her claim that she had ineffective assistance of counsel. There were no statements or testimony about her present or future inability to pay. There was no testimony that Leland was unemployable, or that she would be after her release. The only testimony regarding Leland's employment was by Marsh, who said that Bridgman recommended her friend "Kim" to work as Wilson's caretaker. VRP (May 27, 2014) at 43-44. Leland points to counsel's requirement to know the relevant law, which, in this case, required an objection to the LFOs to preserve the record for appeal. *Lyle*, 188 Wn. App. at 852. While counsel's performance was deficient, Leland fails to demonstrate that the outcome of the proceedings would have been different had counsel objected to the imposition of the LFOs. Thus, Leland's claim for ineffective assistance of counsel fails.

CONCLUSION

We hold that (1) Leland's conviction on the second count of second degree taking of a motor vehicle without permission violated double jeopardy, (2) Leland waived her objection to the discretionary LFOs because she failed to object to their imposition at sentencing, and (3) Leland fails to show that counsel's failure to object to the imposition of LFOs prejudiced the outcome of

her sentencing hearing. Accordingly, we reverse and remand to the trial court with instructions to vacate only Leland's second conviction, and for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

BJORGEN, A.C.J.

MELNICK, J.