# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 79986-0-I |
| Respondent, | |
| v. | DIVISION ONE |
| DESHAWN LAVELLE WEATHERLY, | ORDER WITHDRAWING AND SUBSTITUTING OPINION |
| Appellant. | |

The court has determined that the opinion in the above-entitled case filed on June 1, 2020 shall be withdrawn and a substitute unpublished opinion be filed.

Now, therefore, it is hereby

ORDERED that the opinion filed on June 1, 2020 is withdrawn and a substitute unpublished opinion shall be filed.

FOR THE COURT:

_Mann, C.J._

_Chun, J._

_Appelwick, J._

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 79986-0-I |
| Respondent, | |
| v. | DIVISION ONE |
| DESHAWN LAVELLE WEATHERLY, | UNPUBLISHED OPINION |
| Appellant. | |

MANN, C.J. — Deshawn Weatherly appeals his jury convictions for third degree malicious mischief, felony harassment, and unlawful imprisonment. Weatherly argues that he was denied his right to a unanimous jury verdict because multiple acts could have supported the malicious mischief and harassment convictions. He also contends that the evidence was insufficient to support the unlawful restraint conviction and that the jury instructions relieved the State of its burden to prove that he knowingly restrained the victim. We affirm.

I.

Kamari Thompson met Weatherly at her younger brother's high school basketball game in January 2017. They began seeing each other every day, and by March they were involved romantically. Thompson described the beginning of the relationship as

Citations and pin cites are based on the Westlaw online version of the cited material.

"really good" because Weatherly bought her food and gave her rides to school and work.

Shortly after their relationship began, Weatherly began demanding to look at Thompson's cell phone to determine if she was talking to other men. Weatherly also took Thompson's phone while she slept and even changed the password so that Thompson had to ask him for permission to use her own phone.

In late July 2017, Weatherly was visiting Thompson at her home in Beacon Hill where she lived with her family. Weatherly demanded to look through Thompson's cell phone. When Thompson refused, Weatherly became angry. He took her phone and threw it against a brick fireplace, breaking it in half. Terrified, Thompson tried to get away from Weatherly, but he chased her throughout the house. Ultimately, Thompson locked herself in the garage. Weatherly forced his way through the door, breaking the door frame in the process. Once inside, Weatherly apologized and hugged Thompson.

In mid-August 2017, Thompson and her family were in Las Vegas for her brother's basketball tournament. While there, Thompson and her mother went to a nightclub together. They met a group of people and Thompson exchanged phone numbers with one of the men who said that he would suggest things for Thompson to do while she was in town. After she returned home, the man sent Thompson a text message. Weatherly found the text message on Thompson's cell phone. He became furious and called Thompson names. He then wrapped his hands around Thompson's neck and choked her severely enough to rupture blood vessels in her eyes. Thompson was terrified, believing Weatherly was going to kill her. Weatherly begged Thompson to forgive him, and she did not call the police.

Throughout the relationship, Weatherly threatened Thompson with physical harm. The threat was always the same: Weatherly told Thompson that he would have girls come to her school, her work, or her home, and attack her. Weatherly made this threat "consistently" every time he became angry or frustrated at Thompson. He also made the threat when Thompson tried, on several occasions, to end the relationship.

On the evening of October 29, 2017, Thompson met some friends at an apartment in West Seattle to get ready for a Halloween party held at a nightclub. Weatherly joined Thompson at the party around midnight. When the nightclub closed around 2:00 a.m., Thompson and her friends hailed an Uber back to West Seattle so Thompson could retrieve some of her belongings. Weatherly followed in his work truck so that he could pick Thompson up afterwards.

While driving Thompson home, Weatherly became upset about Thompson talking to her cousin's boyfriend at the nightclub. He pulled over and began to physically assault Thompson by hitting her in the head, biting her chest and pulling out some of her hair. He grabbed Thompson's arms to prevent her from leaving the vehicle. At some point, Weatherly took Thompson's shoes, purse and cell phone. He also locked the vehicle doors so that Thompson could not leave. Thompson manually unlocked the door but Weatherly got out of the vehicle, came around to the passenger side, and locked it from the outside, preventing Thompson from exiting.

Thompson begged Weatherly to free her, stating: "Can you please let me out? I just want to go home." At one point, Thompson successfully escaped the vehicle. However, because she was far from her home and did not have her shoes, her cell phone or her purse, she returned to the car. She asked Weatherly to return her

belongings but he refused. Weatherly began driving and threw Thompson's purse and shoes out the window. Eventually, Weatherly parked, and Thompson, realizing Weatherly would not let her leave, fell asleep. In the morning, Weatherly drove Thompson home. Thompson and her mother went to the hospital for Thompson's injuries, and hospital staff called the police.

The State charged Weatherly with second degree assault by strangulation, unlawful imprisonment, fourth degree assault, harassment, and third degree malicious mischief.[1] A jury convicted Weatherly as charged. Weatherly appeals.

II.

Weatherly first contends that he was deprived of his right to a unanimous jury. He argues that multiple acts could have formed the basis for both the malicious mischief and the harassment convictions, but the State did not elect the act upon which the jury could rely on and the trial court did not give a unanimity instruction. As to the harassment conviction, Weatherly claims that the State presented evidence of multiple threats throughout his relationship with Thompson. As to the malicious mischief conviction, Weatherly contends that the evidence showed two distinct acts of property destruction: breaking Thompson's cell phone by throwing it against the fireplace and damaging the garage door frame by barging through it.

We disagree. Because the multiple acts of harassment were part of a continuing course of conduct, and only one act of property destruction supported the malicious mischief conviction, no election or unanimity instruction was needed.

_____

[1] The State also charged Weatherly with witness tampering and two counts of violation of a court order, which are not at issue in this appeal.

4

We review constitutional errors de novo. State v. Jorgenson, 179 Wn.2d 145, 150, 312 P.3d 960 (2013). Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution, a criminal defendant has a right to a unanimous jury verdict. State v. Fisher, 165 Wn.2d 727, 755, 202 P.3d 937 (2009) (citing State v. Kitchen, 110 Wn.2d 403, 409, 756 P.2d 105 (1988)). When the State presents evidence of several distinct acts that could constitute a charged crime, the jury must agree unanimously on which act constituted the crime. Kitchen, 110 Wn.2d at 411. Either the State must elect the act on which it relies on or the court must instruct the jury to agree unanimously as to what act or acts the State proved beyond a reasonable doubt. Kitchen, 110 Wn.2d at 411. Failure to do so is constitutional error because of "the possibility that some jurors may have relied on one act or incident and some another, resulting in a lack of unanimity on all of the elements necessary for a valid conviction." Kitchen, 110 Wn.2d at 411.

However, an election or unanimity instruction is only required if the State presents evidence of "several distinct acts." State v. Fiallo-Lopez, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995). There is no such requirement if the evidence shows the defendant was engaged in a "continuing course of conduct." Fiallo-Lopez, 78 Wn. App. at 724. A continuing course of conduct is "an ongoing enterprise with a single objective." State v. Love, 80 Wn. App. 357, 361, 908 P.2d 395 (1996). To determine whether criminal conduct constitutes one continuing act, the trial court must evaluate the facts in a commonsense manner. State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). A reviewing court will consider "(1) the time separating the criminal acts and (2) whether the criminal acts involved the same parties, location, and ultimate

5

purpose." State v. Brown, 159 Wn. App. 1, 14, 248 P.3d 518 (2010) (citing Love, 80 Wn. App. at 361).

"[E]vidence that a defendant engages in a series of actions intended to secure the same objective supports the characterization of those actions as a continuing course of conduct rather than several distinct acts." Fiallo-Lopez. 78 Wn. App. at 724. A continuing offense may exist even when it takes place over a long period. See, e.g., State v. Knutz, 161 Wn. App. 395, 409, 253 P.3d 437 (2011) (numerous acts of fraud against the same investor over a period of 29 months constituted a continuing course of conduct because the purpose was "'to promote an enterprise with a single objective'— to obtain money through deceit."); State v. Barrington, 52 Wn. App. 478, 761 P.2d 632 (1988) (multiple incidents of promoting prostitution over three months was a continuing course of conduct when it involved one woman and a "single objective—to make money.").

As to the harassment conviction, the information alleged that Weatherly threatened Thompson between October 1 and October 30, 2017. Weatherly claims that the State presented evidence of multiple threats during the charging period that could have formed the basis for the crime. But the evidence showed a pattern of threatening conduct, not a series of discrete threats. The form of the threat was always the same: that Weatherly would tell his female friends to assault Thompson. And the purpose of each threat was the same: to control Thompson and prevent her from ending the relationship. Because the threats happened so frequently, Thompson was unable to identify specific dates or times that Weatherly threatened her. She knew only that it must have happened at least once in October because Weatherly made the threats

6

"consistently," each time he was angry with her. Because the evidence clearly showed that Weatherly's threats were part of a continuing course of conduct, no election or unanimity instruction was needed.

As to the malicious mischief conviction, the information alleged that Weatherly maliciously caused damage to Thompson's cell phone:

> That the defendant Deshawn Lavelle Weatherly in King County, Washington, between July 1, 2017 and July 31, 2017, did knowingly and maliciously cause physical damage to a phone, the property of Kamari J. Thompson;

Weatherly argues that the act of breaking the garage door frame could also have supported the charge of malicious mischief. We disagree.

"A person is guilty of malicious mischief in the third degree if he or she: knowingly and maliciously . . . [c]auses physical damage to the property of another." RCW 9A.48.090(1)(a). To be malicious, an act must evince "an evil intent, wish, or design to vex, annoy, or injure another person." RCW 9A.04.110(12).

The damage to the door frame was not malicious because Weatherly did not intentionally cause the damage to upset Thompson. Instead, the damage was a result of Weatherly forcing his way into the garage. The deputy prosecutor explained in closing argument that only the breaking of Thompson's cell phone constituted malicious mischief because he chose to throw the cell phone at a hard surface in order to break it. Because only a single act supported the charged crime, no election or unanimity instruction was required.

7

III.

Weatherly next contends that the evidence was insufficient to convict him of unlawful imprisonment because the State failed to prove that he knew his restraint of Thompson was "without legal authority."  We disagree.

Evidence is sufficient to support a conviction if, viewing the evidence in the light most favorable to the State, any rational trier of fact can find the essential elements of the crime beyond a reasonable doubt.  State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).  All reasonable inferences from the evidence are drawn in favor of the State and against the defendant.  Salinas, 119 Wn.2d at 201.  A claim of insufficiency of the evidence "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."  Salinas, 119 Wn.2d at 201.  Circumstantial and direct evidence are equally reliable.  State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

A person is guilty of unlawful imprisonment "if he or she knowingly restrains another person."  RCW 9A.40.040(1).  "Restrain" means "to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty."  RCW 9A.40.010(6).  A person knows or acts knowingly or with knowledge when "he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense."  RCW 9A.08.010(1)(b)(i), (ii).

Relying on State v. Warfield, 103 Wn. App. 152, 5 P.3d 1280 (2000), Weatherly argues that the State must prove not only that the restraint was without legal authority,

but also that the defendant knew it was without legal authority. Warfield involved bounty hunters who had a good faith belief that they had the legal authority to apprehend and return a person to Arizona, where there was a warrant for the person's arrest. Because the Arizona warrant was for a misdemeanor, it had no lawful effect in Washington. Division Two of this court reversed the conviction for unlawful imprisonment, holding that the State was required to prove the bounty hunters knew they lacked legal authority to restrain the victim.

But in State v. Johnson, 180 Wn.2d 295, 325 P.3d 135 (2014), the Washington Supreme Court limited the holding of Warfield "to those unique cases where the defendant had a good faith belief that he or she had legal authority to imprison a person." Johnson, 180 Wn.2d at 304. It held that the logic of Warfield "does not extend to most unlawful imprisonment cases—particularly those involving domestic violence— where there is no indication that the defendants believed they actually had legal authority to imprison the victim." Johnson, 180 Wn.2d at 304. Consequently, "where no claim of a good faith belief of lawful authority is raised, the State need only prove that the defendant acted knowingly to restrain." State v. Dillon, 12 Wn. App. 2d 133, 142, 456 P.3d 1199 (2020).

Weatherly argues the State was nonetheless required to prove he knew the restraint was without legal authority under the law of the case doctrine. The law of the case doctrine provides that "the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the 'to convict' instruction." State v. Hickman, 135 Wn.2d 97, 102, 954 P.2d 900 (1998).

Weatherly is correct that the jury instructions informed the jury that they must find Weatherly knew he was acting without legal authority. Jury instruction 18, defining unlawful imprisonment, provided as follows:

A person commits the crime of unlawful imprisonment when he or she knowingly restrains the movements of another person in a manner that substantially interferes with the other person's liberty if the restraint was without legal authority and was without the other person's consent or accomplished by physical force, intimidation, or deception.

The offense is committed only if the person acts knowingly in all these regards.

(Emphasis added). Jury instruction 20, the to-convict instruction, provided that the jury was required to find each of the following elements beyond a reasonable doubt:

(1) That between October 29, 2017, and October 30, 2017, the defendant restrained the movements of KAMARI J. THOMPSON in a manner that substantially interfered with her liberty;

(2) That such restraint was

(a) without KAMARI J. THOMPSON'S consent or

(b) accomplished by physical force, intimidation, or deception; and

(3) That such restraint was without legal authority;

(4) That with regard to elements (1), (2), and (3), the defendant acted knowingly; and

(5) That any of these acts occurred in the State of Washington.

(Emphasis added).

However, the State presented sufficient evidence such that a reasonable juror could conclude beyond a reasonable doubt that Weatherly knew he was acting without legal authority. Unlike Warfield, where the defendants apprehended the victim in order

to turn him over to law enforcement, Weatherly had no conceivable lawful purpose to restrain Thompson. The evidence showed that Weatherly restrained Thompson solely to punish and frighten her for talking to another man. Weatherly did not say anything that indicated he thought he had legal authority to restrain Thompson. Thus, sufficient evidence exists to support that Weatherly knew he was acting without legal authority.

Finally, Weatherly contends that the knowledge instruction conflicted with the to-convict instruction and misinformed the jury that the State did not need to prove he knew the restraint was unlawful. Jury instruction 19, which defined knowledge, provided as follows:

> A person knows or acts knowingly or with knowledge with respect to a fact, circumstance, or result when he or she is aware of that fact, circumstance, or result. <u>It is not necessary that the person know that the fact, circumstance, or result is defined by law as being unlawful or an element of a crime</u>.

> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.

> When acting knowingly as to a particular fact is required to establish an element of a crime, the element is also established if a person acts intentionally as to that fact.

(Emphasis added). This instruction is identical to 11 <u>Washington Practice: Washington Pattern Jury Instructions: Criminal</u> 10.02 (4th ed. 2016). But we have held that this instruction is an accurate statement of the law with regard to unlawful imprisonment, and thus a trial court does not err by giving the instruction. <u>Dillon</u>, 12 P.3d at 143, n.2. As discussed previously, the State was required to prove that Weatherly knew that he lacked legal authority to restrain Thompson. The State did not have to prove that

11

Weatherly knew that unlawful imprisonment is a crime. The jury instructions did not relieve the State of its burden of proof.

Affirmed.

_____Mann, C.J._____

WE CONCUR:

_____Chun, J._____          _____Appelwick, J._____