IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34093-7-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 34956-0-III) |
| | ) | |
| v. | ) | |
| | ) | |
| BEN ALAN BURKEY, | ) | |
| | ) | |
| Appellant. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |
| In the Matter of the Personal Restraint of | ) | |
| | ) | |
| BEN ALAN BURKEY, | ) | |
| | ) | |
| Petitioner. | ) | |

PENNELL, J. — After his original convictions were reversed for a public trial violation,[1] Ben Alan Burkey was convicted of murder, kidnapping, conspiracy to commit kidnapping, robbery, and assault, all in the first degree. He appeals his convictions and has also filed a timely personal restraint petition. We affirm Mr. Burkey's convictions and dismiss the petition. However, we remand for resentencing and correction of a scrivener's error.

---

[1] *State v. Burkey*, No. 25516-6-III (Wash. Ct. App. May 21, 2015) (unpublished), https://www.courts.wa.gov/opinions/pdf/255166.unp.pdf.

FACTS

In September 2005, Rick Tiwater's murdered body was found in the woods of north Spokane County. Forensic evidence led police to target their investigation on Mr. Burkey. Eventually, law enforcement theorized Mr. Burkey and another man named James Tesch had assaulted and murdered Mr. Tiwater in retaliation for Mr. Tiwater being a perceived law enforcement informant or "snitch." The assault against Mr. Tiwater started during the evening at Mr. Burkey's home, where Mr. Burkey initially hit Mr. Tiwater. Then, after being summoned to the home by Mr. Burkey, Mr. Tesch arrived and continued the assault by kicking Mr. Tiwater, dragging him into the kitchen, and striking him on the head with a ball peen hammer. With Mr. Tiwater unconscious, Mr. Tesch and Mr. Burkey transported Mr. Tiwater to a remote wooded area where they continued their fatal attack. By the time his body was discovered by law enforcement, Mr. Tiwater had suffered several blunt force injuries as well as burns to his head, chest, and hands. Mr. Burkey and Mr. Tesch were charged with several criminal offenses, including first degree assault and first degree murder. The two men were tried separately.

Several witnesses testified to the events leading up to Mr. Tiwater's death. Some of the witnesses from Mr. Burkey's initial trial in 2006 were unavailable for retrial in 2015. The State therefore obtained leave to present the witnesses' testimony through trial

2

transcripts.  Mr. Burkey testified at his first trial, but not the second.  At the second trial, the State introduced transcript evidence of Mr. Burkey's original testimony as part of its case in chief.

Troy Fowler was one of the witnesses whose testimony was presented through a transcript.  Mr. Fowler said he was at Mr. Burkey's house with Mr. Tiwater and Mr. Burkey on the evening of the murder.  Mr. Tesch was not yet present.  Mr. Fowler saw Mr. Burkey strike Mr. Tiwater several times.  He also heard Mr. Burkey call Mr. Tiwater a snitch.  Mr. Fowler testified Mr. Burkey called Mr. Tesch to come over and help figure out if Mr. Tiwater was an informant.  Mr. Fowler then left Mr. Burkey's home before Mr. Tesch arrived.  Mr. Fowler testified he talked to Mr. Burkey the next day.  Mr. Burkey said Mr. Tiwater had fallen into a campfire and would not be seen again.

The State also presented transcript testimony from Mr. Burkey's girlfriend, Patricia Lascelles.  Ms. Lascelles's testimony was less directly helpful to the State than Mr. Fowler's testimony.  Ms. Lascelles denied seeing Mr. Burkey strike Mr. Tiwater.   She also claimed Mr. Burkey told Mr. Tesch to stop while Mr. Tesch attacked Mr. Tiwater inside the home. But Ms. Lascelles also supplied testimony relevant to the State's theory, in that she: (1) admitted Mr. Burkey had sent her to Mr. Tesch's home with instructions to have Mr. Tesch come over, (2) described Mr. Tesch's attack on Mr. Tiwater,

3

(3) explained that Mr. Tesch and Mr. Burkey drove off in Mr. Burkey's car with Mr. Tiwater's body in the back seat, (4) testified that Mr. Burkey and Mr. Tesch returned home in the car the morning after the attack bearing bloody clothes and a golf club, but without Mr. Tiwater, and (5) admitted she attempted to hide or destroy the bloodied evidence at the direction of both Mr. Tesch and Mr. Burkey.

The police recovered physical evidence from Mr. Burkey's home that corroborated Ms. Lascelles's attempted destruction of evidence. They also obtained surveillance footage from a nearby gas station showing Mr. Burkey and another man present with Mr. Burkey's car around 5:00 a.m. the day after the attack began. Mr. Burkey did not appear upset or disoriented in any way.

In statements presented to the jury through law enforcement witnesses and the prior trial transcript, Mr. Burkey blamed Mr. Tesch for Mr. Tiwater's murder. Mr. Burkey admitted he was present during Mr. Tesch's entire violent attack. However, Mr. Burkey denied any involvement. Mr. Burkey explained he tried to tell Mr. Tesch to stop. He also claimed he was fearful of Mr. Tesch and only agreed to help dispose of Mr. Tiwater's body and other evidence after Mr. Tesch threatened to kill Mr. Burkey and his son.

When asked about Mr. Fowler's allegation that Mr. Burkey had hit Mr. Tiwater

prior to Mr. Tesch's arrival at his home, Mr. Burkey admitted to only minor wrongdoing.

Mr. Burkey said he slapped Mr. Tiwater after discovering Mr. Tiwater had used drugs in

front of Ms. Lascelles's son. Mr. Burkey claimed this incident was unrelated to Mr.

Tesch's later attack.

The jury convicted Mr. Burkey of all five pending counts. At sentencing, the trial

court found Mr. Burkey's convictions for first degree kidnapping (count II) and first

degree robbery (count IV) merged with his first degree murder conviction (count I). The

trial court then imposed 548 months of confinement for the murder, with 68 months for

the kidnapping and 171 months for the robbery to run concurrently. The court further

imposed 51 months of confinement on the conspiracy charge (count III) and 123 months

for the assault (count VI), both to run consecutively with the sentence for count I. For the

deadly weapon enhancements, an additional 24 months was added to counts I, II, IV, and

VI, and 12 months was added to count III, with all these enhancements to run consecutive

to the base sentence. The court also imposed community custody terms of 36 months for

counts I and VI, and 18 months for count IV.

Mr. Burkey appeals. He has also filed a statement of additional grounds for

review, and a report as to continued indigency. A personal restraint petition filed by Mr.

Burkey has been consolidated with his direct appeal.

ANALYSIS

*Prior bad act evidence*

Mr. Burkey claims his trial was tainted by the improper introduction of bad act evidence. Specifically, he points to the State's evidence that Mr. Burkey had head-butted Mr. Tesch's girlfriend in front of Mr. Tesch on the day of the murder. The State contends the head-butting evidence was not presented for an improper character purpose. Instead, it was relevant to refute Mr. Burkey's claim that he was fearful of Mr. Tesch and had not willingly assisted with the murder. We agree with the State.

Otherwise inadmissible evidence can become relevant and admissible as a result of defense trial tactics, including comments made in opening statements. *State v. Rupe*, 101 Wn.2d 664, 686-88, 683 P.3d 571 (1984). That is what happened here. During opening statement, defense counsel presented the theory that Mr. Burkey feared Mr. Tesch and was merely a passive observer of Mr. Tesch's assaultive conduct. This theory was further developed during cross-examination of the law enforcement witnesses who had interviewed Mr. Burkey. Because the evidence that Mr. Burkey head-butted Mr. Tesch's girlfriend in front of Mr. Tesch tended to show Mr. Burkey was not fearful of Mr. Tesch, it was relevant to rebut the defense's theory of the case. The trial court did not

abuse its broad discretion in admitting this evidence.

*Lack of unanimity jury instruction*

Mr. Burkey argues for the first time on appeal that the trial court violated his right to a unanimous verdict by failing to require juror agreement on which acts constituted the crime of first degree assault. Mr. Burkey claims Mr. Tiwater had been assaulted numerous times in the hours before his murder and any of the attacks could have constituted first degree assault. According to Mr. Burkey, these circumstances required the court to issue a unanimity instruction pursuant to *State v. Petrich*, 101 Wn.2d 566, 683 P.2d 173 (1984).

We disagree with Mr. Burkey's characterization of the record. A unanimity instruction is required when the prosecutor presents evidence of several distinct acts, any one of which could form the basis of a charged crime. *Id*. at 571-72. But that is not what happened here. According to the State's theory of the case, the assault on Mr. Tiwater was an ongoing crime that started in Mr. Burkey's home and then continued into the woods. 3 Verbatim Report of Proceedings (VRP) (Dec. 14, 2015) at 595-96. The State claimed Mr. Burkey was involved in the assault from the very beginning and that both Mr. Burkey and Mr. Tesch were united in their effort to punish Mr. Tiwater for being a snitch. Under these circumstances, the individual acts of violence perpetrated against Mr.

Tiwater constituted a continuing course of conduct. *State v. Crane*, 116 Wn.2d 315, 326, 804 P.2d 10 (1991); *State v. Love*, 80 Wn. App. 357, 361, 908 P.2d 395 (1996). As such, no unanimity instruction was required. *Crane*, 116 Wn.2d at 326; *Love*, 80 Wn. App. at 361.

The State's theory of a continuing assault contrasted with the defense's theory that there had been two separate assaults of Mr. Tiwater: (1) a minor assault by Mr. Burkey (for which no charges had been brought), precipitated by Mr. Tiwater's use of drugs in front of Ms. Lascelles's son, and (2) a separate major assault perpetrated solely by Mr. Tesch. Given these opposing case theories, the lack of a unanimity instruction actually helped Mr. Burkey. As written, the instructions required the jury to make an all or nothing decision about Mr. Burkey's offense conduct, thereby increasing the odds of reasonable doubt. Mr. Burkey was not prejudiced by the lack of a unanimity instruction. Reversal is unwarranted in these circumstances. *See State v. Carson*, 179 Wn. App. 961, 979, 320 P.3d 185 (2014), *aff'd*, 184 Wn.2d 207, 357 P.3d 1064 (2015).

*Alleged nondisclosure of impeachment evidence*

Mr. Burkey argues the State improperly withheld material impeachment evidence pertaining to Patricia Lascelles's plea agreement with the State. We review this claim de novo. *State v. Mullen*, 171 Wn.2d 881, 893-94, 259 P.3d 158 (2011).

8

Some background is warranted prior to analyzing the merits of Mr. Burkey's claim. As noted, the State presented Ms. Lascelles's testimony through a transcript from Mr. Burkey's first trial. The transcript contains a cross-examination of Ms. Lascelles by Mr. Burkey's prior attorney. During the cross-examination, no mention was made of Ms. Lascelles's plea agreement with the State.

After Mr. Burkey was convicted at his second trial, his attorney filed a motion for a new trial. Counsel claimed he had not been aware of Ms. Lascelles's plea agreement until after trial. The attorney representing Mr. Burkey at his second trial was not the same individual who represented Mr. Burkey at his first trial.

The trial court held a hearing on Mr. Burkey's new trial motion. After reviewing the parties' evidentiary submissions, the trial court found the State had disclosed Ms. Lascelles's plea agreement to Mr. Burkey's initial trial attorney. 4 VRP (Jan. 29, 2016) at 667-68; Clerk's Papers (CP) at 368-69. Accordingly, there had been no improper withholding. 4 VRP (Jan. 29, 2016) at 668. The trial court also found that the attorney who represented Mr. Burkey at his second trial could have easily discovered Ms. Lascelles's plea agreement. *Id*. Thus, Mr. Burkey had not met the legal standard for relief from his conviction.

Based on the trial court's findings, which we review with deference, *State v.*

*Davila*, 184 Wn.2d 55, 74, 357 P.3d 636 (2015), it is apparent the State never withheld

exculpatory impeachment evidence.  By disclosing Ms. Lascelles's plea agreement to

Mr. Burkey's initial trial counsel (the only attorney to ever cross-examine Ms. Lascelles),

the State disclosed sufficient information to enable Mr. Burkey to take advantage of any

exculpatory value from the plea agreement.  *Mullen*, 171 Wn.2d at 896.  Mr. Burkey was

therefore not deprived of his right to a fair trial.  Reversal is unwarranted.

*Sentencing issues and scrivener's error*

The parties agree on two sentencing errors as well as a scrivener's error in Mr.

Burkey's judgment and sentence.  Because there is no dispute that these errors require

remand, our analysis is brief.

First, Mr. Burkey argues the trial court erroneously imposed sentences for robbery

(count IV), kidnapping (count II), and murder (count I) after finding the three crimes

merged.  We accept the State's concession that the multiple sentences imposed by the

court was error.  *See State v. Williams*, 131 Wn. App. 488, 498, 128 P.3d 98 (2006).

Given the trial court's merger finding, the convictions for robbery and kidnapping should

have been set aside.  No separate weapons enhancements were applicable.  Nor were

terms of community custody.  Remand for resentencing is appropriate.

Second, Mr. Burkey argues the community custody term imposed for his first degree assault conviction violates the prohibition on ex post facto laws. At the time of Mr. Burkey's 2005 offense conduct, the Sentencing Reform Act of 1981, chapter 9.94A RCW, only contemplated a variable community custody term of 24-48 months. Former RCW 9.94A.715 (2001), repealed by LAWS OF 2009, ch. 28, § 42(2); former WAC 437-20-010 (2000). Since 2009, RCW 9.94A.701(1)(b) has mandated a term of 36 months for a serious violent offense. LAWS OF 2009, ch. 375, § 5. Because application of the mandatory 36-month term to Mr. Burkey violates the prohibition on ex post facto laws, resentencing is appropriate. *State v. Coombes*, 191 Wn. App. 241, 250, 361 P.3d 270 (2015). At resentencing, Mr. Burkey should be subject to the laws in effect in 2005.

Finally, the jury convicted Mr. Burkey of first degree felony murder, which is a violation of RCW 9A.32.030(1)(c). Yet, the judgment and sentence indicates Mr. Burkey was convicted of premeditated murder under RCW 9A.32.030(1)(a). The parties agree this was error. It shall be corrected at resentencing. *See State v. Munoz-Rivera*, 190 Wn. App. 870, 895, 361 P.3d 182 (2015).

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Mr. Burkey raises five issues in his statement of additional grounds for review (SAG). Each is addressed in turn.

11

*Ineffective assistance of counsel*

Mr. Burkey argues he received ineffective assistance of counsel because his attorney only had 17 days to prepare after he was told the State would be allowed to use transcripts of testimony from the first trial. A claim of ineffective assistance requires proof of deficient performance and prejudice. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Neither requirement has been met.

Mr. Burkey has not demonstrated deficient performance. There is no set period of time for trial preparation that is indicative of deficient performance. *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). The transcripts at issue here were short. No evidence indicates defense counsel had insufficient time for preparation. To the contrary, Mr. Burkey's trial counsel represented Mr. Burkey during his initial appeal. In that appeal, Mr. Burkey made a sufficiency challenge to the State's evidence. Given this circumstance, it is apparent that counsel had ample advance opportunity to review Mr. Burkey's trial transcripts.

Mr. Burkey also fails to show prejudice. The record does not contain any information suggesting the outcome of Mr. Burkey's case would have been different had counsel been given more time to prepare.

Nos. 34093-7-III; 34956-0-III
*State v. Burkey*

*Lack of cautionary instruction on accomplice testimony*

Mr. Burkey next argues the trial court erroneously failed to supply the jury with a cautionary instruction regarding Ms. Lascelles's purported accomplice testimony. He also argues defense counsel was deficient for not requesting such an instruction.

Mr. Burkey's substantive claim fails because a cautionary instruction is only required when an accomplice's testimony is uncorroborated by other evidence. *State v. Harris*, 102 Wn.2d 148, 155, 685 P.2d 584 (1984), *overruled in part on other grounds by State v. McKinsey*, 116 Wn.2d 911, 810 P.2d 907 (1991). Even assuming Ms. Lascelles should be considered an accomplice, her testimony was amply corroborated by physical evidence and the testimony of other witnesses, including Mr. Burkey himself. Given these circumstances, the failure to issue a cautionary instruction was not reversible error. *Harris*, 102 Wn.2d at 155 ("If the accomplice testimony was substantially corroborated by testimonial, documentary or circumstantial evidence, the trial court did not commit reversible error by failing to give the instruction.").

Mr. Burkey also cannot show defense counsel performed deficiently by failing to seek a cautionary instruction. Ms. Lascelles's testimony was largely favorable to Mr. Burkey. The defense decision not to emphasize Ms. Lascelles's credibility problems was reasonably strategic.

13

*Use of transcripts from first trial without determining reliability*

Relying on *Ohio v. Roberts*, 448 U.S. 56, 65-66, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), Mr. Burkey argues the trial court violated his confrontation clause[2] rights by not determining the reliability of Ms. Lascelles's transcript testimony prior to admission. Mr. Burkey misapprehends the nature of the constitutional right to confrontation. The standard for a defendant's confrontation rights is no longer set by *Ohio v. Roberts*. The current law on confrontation rights is outlined in *Crawford v. Washington*, 541 U.S. 36, 68-69, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Under *Crawford*, a testimonial statement, such as testimony from a prior trial, may be admitted so long as the State can show "unavailability and a prior opportunity for cross-examination." *Id.* at 68. This standard has been met. There was no confrontation violation.

*State's use of allegedly perjured testimony*

Mr. Burkey's next argument is that the State violated his right to a fair trial by knowingly using perjured testimony from Ms. Lascelles. *See State v. Larson*, 160 Wn. App. 577, 594-95, 249 P.3d 669 (2011). The argument has already been addressed by the trial court and the court determined, based on substantial evidence, that there had been no perjury. Given this circumstance, the State was entitled to rely on Ms. Lascelles's

---

[2] U.S. CONST., amend. VI; WASH. CONST., art. I, § 22.

14

testimony.

*Impeachment evidence regarding Ms. Lascelles*

Mr. Burkey claims his attorney should have attempted to impeach Ms. Lascelles's credibility with evidence of a prior conviction, as contemplated by ER 609. Nothing in the record shows Ms. Lascelles had been convicted of a previous crime that would be relevant under ER 609(a). Accordingly, Mr. Burkey has not shown deficient performance. In addition, Ms. Lascelles's testimony was beneficial to the defense's theory of the case. As a result, Mr. Burkey has failed to establish prejudice.

*Cumulative or harmless error*

Mr. Burkey last argues he deserves a new trial because of cumulative error. *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). Because we find no error, the cumulative error doctrine does not apply.

PERSONAL RESTRAINT PETITION

*Ineffective assistance of counsel based on conflict of interest*

Mr. Burkey contends his trial counsel labored under an unconstitutional conflict of interest because counsel also represented a potential witness by the name of Terrance Kinard. We reject this claim. Mr. Burkey has not met his burden of proving his counsel provided ineffective assistance due to a conflict.

15

To show a constitutional violation of the right to conflict-free counsel, "a defendant must show that (a) defense counsel 'actively represented conflicting interests' and (b) the 'actual conflict of interest adversely affected' his performance." *In re Pers. Restraint of Gomez*, 180 Wn.2d 337, 348-49, 325 P.3d 142 (2014) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980)). "An actual conflict of interest exists when a defense attorney owes duties to a party whose interests are adverse to those of the defendant." *State v. White*, 80 Wn. App. 406, 411-12, 907 P.2d 310 (1995); *accord State v. Byrd*, 30 Wn. App. 794, 798, 638 P.2d 601 (1981); *see also* RPC 1.7. A "[p]ossible or theoretical" conflict of interest is "'insufficient to impugn a criminal conviction.'" *Gomez*, 180 Wn.2d at 349 (quoting *Cuyler*, 446 U.S. at 350).

Mr. Burkey has not pointed to any evidence indicating his interests were adverse to Mr. Kinard's. Mr. Kinard was never implicated in the murder of Mr. Tiwater. Nor was he a relevant witness.[3] The charges that gave rise to defense counsel's representation of

---

[3] Mr. Burkey claims Mr. Kinard could have testified about Mr. Burkey's lack of ill will toward Mr. Tiwater. This testimony was of questionable relevance, particularly given the fact that Mr. Kinard was not present at the time of the offense. To the extent Mr. Kinard's testimony was relevant, it would have been readily impeachable based on Mr. Kinard's criminal history. Defense counsel provided stronger evidence of Mr. Burkey's lack of ill will toward Mr. Tiwater through the testimony of attorney Patrick Stiley.

Mr. Kinard had nothing to do with Mr. Burkey. Mr. Burkey's claim that defense counsel may have nevertheless been facing a conflict is insufficient to overturn a conviction. *State v. Dhaliwal*, 150 Wn.2d 559, 573, 79 P.3d 432 (2003).

*State's use of Mr. Burkey's testimony from first trial*

Mr. Burkey makes several claims regarding the State's use of his prior trial testimony during its case in chief. Mr. Burkey does not challenge the admissibility of his prior testimony. Instead, he makes less direct claims of error. None are persuasive.

First, Mr. Burkey complains defense counsel was ineffective because counsel did not want Mr. Burkey to take the stand even after the court ruled Mr. Burkey's prior testimony could be used in the State's case in chief. We reject this claim. Had Mr. Burkey taken the stand, he could have been cross-examined based on any slight inconsistency with his prior testimony. Defense counsel's recommendation that Mr. Burkey exercise his right to remain silent on remand was reasonably strategic.

Mr. Burkey also argues he was prejudiced because a police detective read his former testimony to the jury. But the jury was instructed to consider the testimony as if it came from Mr. Burkey, not the detective. Jurors are presumed to follow the court's instructions absent evidence to the contrary. *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007). There is no such evidence here.

17

Lastly, Mr. Burkey suggests the use of his prior testimony forced him to choose between remaining silent or testifying in order to stop a witness for the State from reading his testimony. Mr. Burkey's reasoning is unfounded. Mr. Burkey's prior testimony was admissible as a statement by a party opponent. ER 801(d)(2). As such, its admissibility did not turn on Mr. Burkey's availability as a witness or decision to testify. *Compare* ER 801(d)(2) (statement of party opponent not hearsay) *with* ER 804(b)(1) (prior witness testimony admissible only if witness unavailable).

*Alleged perjured testimony by Ms. Lascelles*

This argument fails for the same reason noted in the analysis of the issue in Mr. Burkey's SAG. There was no perjured testimony.

*Incorrect accomplice liability jury instruction*

Mr. Burkey argues the language of the jury instruction on accomplice liability misstated the law for two reasons. First, he argues the jury was instructed it could convict him as an accomplice if he acted with knowledge he was promoting any crime. He is wrong. Mr. Burkey cites the following sentence from the accomplice liability instruction as error: "A person is an accomplice in the commission of *a crime* if, with knowledge that it will promote or facilitate the commission of the specific crime charged . . . ." CP at 236 (emphasis added). Mr. Burkey complains about the emphasized language. But the

18

instruction clearly goes on to say Mr. Burkey is only an accomplice if he had knowledge his actions would promote the specific crime charged. This accords with the Washington Supreme Court's requirements for the accomplice liability instruction. *See State v. Cronin*, 142 Wn.2d 568, 578-80, 14 P.3d 752 (2000); *State v. Roberts*, 142 Wn.2d 471, 510-13, 14 P.3d 713 (2000).

Mr. Burkey also argues the jury instruction explained in a confusing manner what it means to "aid" someone. Again, he is wrong. The instruction stated:

> The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.
> A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.

CP at 236.

This language clearly and unambiguously states what "aid" means for the purposes of accomplice liability. It then goes on to further explain that someone who is present at the scene and ready to assist has provided aid, but merely being present without more is not enough. The instruction then clarifies that presence is not always required. The instruction provides the general definition of "aid" and then some clarifying points. It is neither confusing nor misleading.

19

*Alleged improper closing argument*

A defendant bears the burden of showing that the prosecutor's comments are both improper and prejudicial. *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). Alleged improper arguments by the prosecutor must be reviewed in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given. *State v. Russell*, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994).

Mr. Burkey has provided quotations from different parts of the prosecutor's closing argument and argues these statements were misconduct because they misstated the evidence, were not supported by the evidence, and were otherwise improper. For example, Mr. Burkey takes issue with the prosecutor's argument: "But that's the individual that Mr. Burkey was waiting for to back him up when they were finally going to administer punishment to Mr. Tiwater." 3 VRP (Dec. 14, 2015) at 581. Mr. Burkey calls this a fabrication because the words "back him up" or "administer punishment" were not used in the trial testimony. He is correct that those exact words were not used. But Mr. Fowler testified Mr. Burkey called Mr. Tesch over to help figure out if Mr. Tiwater was a snitch. A prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and express such inferences to the jury. *State v. Hoffman*, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991). The prosecutor's argument about backing up

or administering punishment was a reasonable inference given Mr. Fowler's testimony and other testimony supporting the State's theory in general. Mr. Burkey may disagree with the State's inference, but that does not make the inference improper or the prosecutor's actions misconduct. Mr. Burkey presents 29 parts of the prosecutor's closing argument alleging misconduct. All of his arguments have the same flaw as the one above, ignoring the prosecutor's latitude to argue inferences from the evidence. There was no misconduct here.[4]

## MOTION FOR PRODUCTION OF TRANSCRIPTS

Mr. Burkey argues the State should be compelled to produce the unredacted transcripts of his prior testimony to "assure that the record on appeal is sufficiently complete." Motion for Production of Transcripts, *In re Pers. Restraint of Burkey*, No. 34956-0-III, at 2 (Wash. Ct. App. Jan. 3, 2017). But he does not explain how these transcripts will aid this court's review. The existing transcripts of the prior testimony contain no gaps or omissions. Further, the record indicates the redacted portions of the transcripts relate to objections that were raised during the first trial. Defense counsel wanted to make sure any of those objections that needed to be preserved could be so, but

---

[4] Mr. Burkey also argues defense counsel was ineffective for failing to object to the alleged prosecutorial misconduct. Since there was no misconduct, there was likewise no ineffective assistance for failing to object. *State v. Larios-Lopez*, 156 Wn. App. 257, 262, 233 P.3d 899 (2010).

21

neither of the parties wanted those objections read to the jury. The reason for the redactions is adequately explained in the record, and Mr. Burkey has provided no other justification for compelling production of unredacted transcripts.

## APPELLATE COSTS

Mr. Burkey has complied with this court's general order by submitting a continued indigency report, and has requested a waiver of appellate costs in his opening brief. We grant the request.

## CONCLUSION

We affirm Mr. Burkey's convictions, dismiss his personal restraint petition, and deny the motion to compel production of transcripts, but remand for resentencing and correction of the scrivener's error.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____          _____ (result only)
Siddoway, J.                                              Lawrence-Berrey, A.C.J.

22